PHI U. NGUYEN (GA BAR NO. 578019)
(Admitted *Pro Hac Vice*)
ASIAN AMERICANS ADVANCING JUSTICE – ATLANTA
5680 Oakbrook Parkway, Suite 148
Norcross, Georgia 30093
Telephone: (770) 818-6147
Fax: (404) 890-5690
Email: pnguyen@advancingjustice-atlanta.org

*Additional Counsel Listed On Next Page*

Attorneys for Petitioners

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION – RONALD REAGAN FEDERAL BUILDING

| | |
|---|---|
| HOANG TRINH, VU HA, LONG NGUYEN, NGOC HOANG, DAI DIEP, BAO DUONG, and SIEU NGUYEN, on behalf of themselves and all of those similarly situated,<br><br>              Petitioners,<br><br>       v.<br><br>THOMAS D. HOMAN, Deputy Director and Senior Official Performing Duties of the Director, United States Immigration and Customs Enforcement; KIRSTJEN M. NIELSEN, Secretary, United States Department of Homeland Security; JEFFERSON B. SESSIONS III, United States Attorney General; DAVID MARIN, Field Office Director, Los Angeles Field Office, United States Immigration and Customs Enforcement; SANDRA HUTCHENS, Sheriff, Orange County, Calif.; and DOE 1, Warden, Adelanto ICE Processing Center,<br><br>              Respondents. | Case No. 8:18-cv-316-CJC-GJS<br><br>**FIRST AMENDED HABEAS CORPUS CLASS ACTION PETITION AND CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1 | LABONI HOQ (SBN 224140)
CHRISTOPHER LAPINIG (SBN 802525)
2 | ASIAN AMERICANS ADVANCING JUSTICE – LA
1145 Wilshire Blvd., 2nd Floor
3 | Los Angeles, CA 90017
Telephone: (213) 977-7500
4 | Fax: (213) 977-7595
Email: lhoq@advancingjustice-la.org
5 | Email: clapinig@advancingjustice-la.org

6 |
JINGNI (JENNY) ZHAO (SBN 284684)
7 | ANOOP PRASAD (SBN 250681)
KEVIN CHUN HOI LO (SBN 278908)
8 | MELANIE CHUN-YU KIM (SBN 292588)
WINIFRED KAO (SBN 241473)
9 | ASIAN AMERICANS ADVANCING JUSTICE –
ASIAN LAW CAUCUS
10 | 55 Columbus Avenue
San Francisco, CA 94111
11 | Telephone: (415) 896-1701
Fax: (415)896-1702
12 | Email: jennyz@advancingjustice-alc.org

13 | TUAN V. UONG (SBN 272447)
FARAH TABIBKHOEI (SBN 266312)
14 | CHRISTOPHER M. BUTLER (SBN 318219)
PATIL T. DERDERIAN (SBN 316549)
15 | REED SMITH, LLP
355 South Grand Avenue, Suite 2800
16 | Telephone: (213) 457-8000
Fax: (213) 457-8080
17 | Email: tuong@reedsmith.com
Email: ftabibkhoei@reedsmith.com
18 | Email: cbutler@reedsmith.com
Email: pderderian@reedsmith.com

19 |
JESSE A. DAVIS III (GA BAR NO. 140978)
20 | (Admitted *Pro Hac Vice*)
DAVIS ADAMS, LLC
21 | 317 W. Hill St., Suite 201
Decatur, Georgia 30030
22 | Telephone: (404) 373-8466
Fax: (404) 373-8455
23 | Email: jess.davis@davis-adams.com

24 |
25 |
26 |
27 |
28 |

Case No. 8:18-cv-316          – 2 –

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## **INTRODUCTION**

1.     This class action habeas petition and complaint for declaratory and injunctive relief is brought on behalf of Petitioners, who fled war-torn Vietnam, were accepted by the United States as refugees before July 12, 1995 and have resided in the United States since they were young children or teenagers. As a result of abrupt and unlawful actions by Respondents, Petitioners currently face unwarranted and indefinite immigration detention.

2.     Petitioners became lawful permanent residents of this country many years ago but, based on criminal convictions, lost their green cards and were ordered removed from the United States. Although Petitioners have final orders of removal, they cannot be repatriated under the existing repatriation agreement between the United States and Vietnam. *See* Agreement Between the Government of the United States and the Government of the Socialist Republic of Vietnam on the Acceptance of the Return of Vietnamese Citizens.[1] The agreement does not allow for the repatriation of Vietnamese immigrants who came to the United States before July 12, 1995 ("pre-1995 Vietnamese immigrants"), a population that is largely comprised of refugees who fled Vietnam after the war to escape persecution under the new communist regime.

3.     United States Immigration and Customs Enforcement ("ICE") has had a longstanding practice of releasing pre-1995 Vietnamese immigrants with final orders of removal due to legal constraints on their detention authority. Recognizing that pre-1995 Vietnamese immigrants are "not subject to return to Vietnam" under the repatriation agreement, ICE has typically released these immigrants on orders of supervision within 90 days of their removal orders becoming final. The repatriation

---

[1] This agreement can be found on the U.S. Department of State's website. *See* Attachment A (Agreement Concerning the Acceptance of the Return of Vietnamese Citizens, U.S.- NĂM., Jan. 22, 2008, 08 – 43, https://www.state.gov/documents/organization/108921.pdf).

Case No. 8:18-cv-316                                   – 1 –

agreement has thus given thousands of pre-1995 Vietnamese immigrants the opportunity to return to their families and communities to rebuild their lives.

4.    In 2017, ICE abruptly departed from past enforcement practices pertaining to pre-1995 Vietnamese immigrants with final orders of removal. ICE began subjecting pre-1995 Vietnamese immigrants to much longer periods of post-removal order detention, in some cases as long as eleven months. ICE also began re-detaining without notice pre-1995 Vietnamese immigrants all across the United States who had been living peaceably in their communities on orders of supervision for years or decades.

5.    ICE's enforcement tactics have sown fear in Vietnamese refugee communities around the country. Immigrants from other countries that have also historically refused to accept immigrants for repatriation, including Cambodia, Somalia, and Iraq, are similarly experiencing indiscriminate ICE arrests, which are the subjects of pending legal actions as well.    *See, e.g.*, *Nak Kim Chhoeun v. David Marin*, United States District Court, Central District of California, Case No. 8:17-cv-01898-CJC (GJSx).

6.    When this action was filed on February 22, 2018, Petitioners' counsel were aware of approximately 40 pre-1995 Vietnamese immigrants with final orders of removal across the country who were beyond 90 days of post-removal order detention. The total number of similarly situated individuals was likely much larger. Since then, Petitioners' counsel have learned of additional pre-1995 Vietnamese immigrants who have reached 90 days of post-removal order detention. On information and belief, ICE intends to continue to detain pre-1995 Vietnamese immigrants with final orders of removal. The number of Vietnamese with final orders of removal who are at risk of future detention is between 8,000 and 10,000. Based on ICE estimates from 2008, an overwhelming percentage of these individuals arrived in the United States before July 12, 1995.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

7.     ICE has undertaken its detention campaign without any evidence that Vietnam will accept pre-1995 Vietnamese immigrants that have been or will be detained. The repatriation agreement has not been rescinded or modified by either country. Given Vietnam's longstanding policy of categorically denying repatriation to pre-1995 Vietnamese immigrants, memorialized in the existing and valid repatriation agreement, detention of Petitioners without an individualized and specific showing that Vietnam actually intends to accept them is unlawful.

8.     Additionally, ICE has kept pre-1995 Vietnamese immigrants in detention past 180 days without providing them any meaningful custody review to determine whether continued detention is warranted because they pose a danger or flight risk. ICE cannot lawfully hold Petitioners in prolonged detention absent an individualized showing of danger or flight risk before a neutral decision maker.

## JURISDICTION

9.     This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), the Suspension Clause of Article I of the United States Constitution, 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1361 (mandamus). The Court may also grant relief under 28 U.S.C. §§ 2201-02 (Declaratory Judgment Act) and 28 U.S.C. § 1651 (All Writs Act).

## VENUE

10.    Venue is proper in the Central District of California under 28 U.S.C. § 1391(e) because Respondents are federal officers sued in their official capacity; Respondents Marin and Hutchens are based in this district; Petitioners Hoang Trinh, Vu Ha, and Dai Diep and numerous class members reside in this district; Petitioners Dai Diep, Bao Duong, and Sieu Nguyen and numerous class members are currently detained in this district; Petitioners Hoang Trinh and Vu Ha were previously detained in this district; and a substantial part of the events or omissions giving rise to these claims occurred in this district. Venue is also proper under 28 U.S.C. §§

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

2241 *et seq.*, as Respondents exercise control over Petitioners. *Armentero v. INS*, 340 F.3d 1058, 1069-70 (9th Cir. 2003), *withdrawn on reh'g*, 382 F.3d 1153 (9th Cir. 2004) (explaining why "practicality, efficiency, and the interests of justice" demand relaxation of immediate custodian rule in habeas challenges to immigration detention); *see also Roman v. Ashcroft*, 340 F.3d 314, 319 (6th Cir. 2003) (recognizing that while ICE Field Office Director is generally the proper respondent for immigration habeas petitioners, higher level ICE officials may be proper respondents in extraordinary circumstances); *Vasquez v. Reno*, 233 F.3d 688, 696 (1st Cir. 2000).

## **PARTIES**

11.    Petitioner Hoang Trinh is a 41-year-old resident of Orange County, California who legally entered the United States from Vietnam as a four-year-old refugee in 1980. He subsequently adjusted his status to become a lawful permanent resident. His parents, now married for more than 50 years, raised a large Catholic family—Hoang and his six sisters—that centered around helping build a thriving family business: a neighborhood bakery. Hoang later married and now has two children, an 18-year-old daughter who attends California State University, Long Beach, and a 13-year-old son. Hoang's wife, two children, parents, and six sisters are all United States citizens. Hoang has no remaining family in Vietnam. In early 2015, Hoang was arrested on a drug charge, for which he served one year in prison. After allegedly being found in possession of a marijuana plant in 2017, Hoang was incarcerated in Orange County before being transferred to ICE custody in June 2017. He was ordered removed from the United States on July 27, 2017 and remained incarcerated at the Theo Lacy Facility in Orange County until April 16, 2018, when he was released on an order of supervision. During this time, he was never afforded a bond hearing before an immigration judge to determine whether his prolonged

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

detention was justified. He was also never interviewed by the Vietnamese government regarding repatriation to Vietnam.

12.     Petitioner Vu Ha is a 37-year-old resident of Orange County, California who legally entered the United States from Vietnam as a 10-year-old refugee in 1990. He became a lawful permanent resident shortly after his arrival to the United States. His parents are United States citizens, as are his sister and his 18-year-old daughter. An artist and avid runner, Vu has primarily worked at the nail salon his mother owns. He was arrested three times as a young adult between the years 2000 and 2005, with the most serious offense being robbery. In 2017, Vu was arrested and detained for failing to pay a citation for driving without a license. He was then transported from a county jail to ICE custody in May 2017. He was ordered removed from the United States on September 19, 2017 and remained incarcerated at the Adelanto ICE Processing Center in Adelanto, California until April 13, 2018, when he was released on an order of supervision. Vu has never been interviewed by the Vietnamese government regarding repatriation to Vietnam. While detained, Vu was never afforded a bond hearing before an immigration judge to determine whether his prolonged detention was justified.

13.     Petitioner Long Nguyen is 41-year-old resident of Charleston, South Carolina, who legally entered the United States as an eleven-year-old refugee in 1987. He became a lawful permanent resident the following year. He is now married to a United States citizen and has a two-year-old daughter and three stepdaughters who are all United States citizens. His parents also reside in the United States as lawful permanent residents. The Nguyen family is active in their local Catholic church, and Long and his wife have worked together for many years at a nail salon his wife manages. Long's only felony offense involved a nonviolent drug charge in Kansas in 2006. In 2011 or 2012, ICE detained Long upon his reentry to the United States after traveling abroad. He was ordered to be removed from the United States

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

on April 18, 2012 but was released on an order of supervision after Vietnam would not accept his deportation. Even though he reliably reported to ICE for years under his order of supervision, Long was suddenly pulled over on his way to work and re-detained by ICE officers on October 19, 2017. He was held at the Stewart Detention Center in Lumpkin, Georgia until March 23, 2018, when he was released on an order of supervision.

14.     Petitioner Ngoc Hoang is a 44-year-old resident of Gwinnett County, Georgia who legally entered the United States in 1990 as a refugee. Both of his parents and his only sibling are United States citizens. Ngoc was married to a United States citizen with whom he has four children, ages 16, 14, 13 and 11, all of whom are United States citizens. Ngoc works as a nail salon technician, helping to provide for his four children, as well as his current partner and her young son. He has no family remaining in Vietnam. In 1994, Ngoc pleaded guilty to check fraud in Washington, and in 2010, he was placed on probation in Georgia for simple assault and simple battery. He was ordered removed from the United States on December 12, 2012 and released on an order of supervision approximately two months later. Over the next almost five years, Ngoc consistently complied with the requirements of his order of supervision. On the morning of November 6, 2017, Ngoc was suddenly re-arrested by ICE officers at his home. He was held at the Stewart Detention Center in Lumpkin, Georgia and the Irwin County Detention Center in Ocilla, Georgia in ICE custody until April 23, 2018, when he was released on an order of supervision.  Ngoc has never been interviewed by the Vietnamese government regarding repatriation to Vietnam.

15.     Petitioner Sieu Nguyen is a 32-year-old resident of Sacramento, California. He, his parents, and his four older brothers escaped Vietnam by boat when Sieu was three years old. They were accepted to the United States as refugees in September 1989, and Sieu became a lawful permanent resident shortly thereafter.

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

The rest of Sieu's family—his parents, his four older brothers, and his three younger siblings—are all United States citizens. Sieu was convicted of robbery in 2007 and burglary and receipt of stolen property in 2010. After serving time in prison, Sieu was transferred to Adelanto ICE Processing Center in Adelanto, California on November 21, 2017 for the initiation of removal proceedings. Sieu was ordered removed to Vietnam on December 19, 2017 and remains detained in Adelanto. He has never been interviewed by the Vietnamese government regarding repatriation to Vietnam.

16.     Petitioner Dai Diep is a 46-year-old resident of Santa Ana, California, who legally entered the United States as a refugee in May 1995. He became a lawful permanent resident the following year. Dai came to the United States with his mother, stepfather, and two half-siblings, all of whom are now U.S. citizens living in the United States. In November 2015, he pleaded guilty to second-degree robbery, second-degree burglary, and vandalism and was sentenced to a total of two years of imprisonment. In April 2017, he was released on parole from state prison and transferred to ICE custody.  He was ordered removed from the United States on October 26, 2017, and he remains incarcerated at the Adelanto ICE Processing Center in Adelanto, California. Dai has never been interviewed by the Vietnamese government regarding repatriation to Vietnam.

17.     Petitioner Bao Duong is a 42-year-old resident of San Diego, California, who legally entered the United States as a refugee in 1980 and became a lawful permanent resident the same year. His mother and father are also lawful permanent residents, and his three sisters, two of whom were born in the United States, are U.S. citizens. In 2013, Bao was convicted on robbery charges that resulted in him being imprisoned for three years. He was paroled from prison in June 2016.  In September 2017, Bao was arrested for allegedly being in possession of marijuana and was transferred to ICE custody after posting bail. He was ordered removed from the

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

United States on November 14, 2017 and has remained incarcerated at the Adelanto ICE Processing Center in Adelanto, California since then. The Vietnamese government has not interviewed Bao regarding repatriation to Vietnam. Bao has not been afforded a bond hearing before an immigration judge to determine whether his prolonged detention is justified.

18.     Respondent Thomas D. Homan is the Deputy Director and Senior Official Performing Duties of the Director of ICE. As the head of ICE, an agency within the United States Department of Homeland Security that detains and removes noncitizens, Respondent Homan is a legal custodian of Petitioners and all class members. Respondent Homan is an appropriate respondent for this habeas action because, on information and belief, decisions regarding the detention of pre-1995 Vietnamese immigrants are being made at ICE Headquarters and because Petitioners and class members are often transferred between different regions of the country.

19.     Respondent Kirstjen M. Nielsen is the Secretary of the United States Department of Homeland Security. She is responsible for the implementation and enforcement of the immigration laws and oversees ICE. Respondent Nielsen has ultimate custodial authority over Petitioners and all class members.

20.     Respondent Jefferson B. Sessions III is the Attorney General of the United States. As the head of the United States Department of Justice, which oversees the immigration courts, Respondent Sessions shares responsibility for enforcement of the immigration laws with Respondents Kirstjen M. Nielsen and Thomas D. Homan.

21.     Respondent David Marin is the Field Office Director for ICE's Los Angeles, California, Field Office, which has detention authority over noncitizens in ICE custody at Adelanto ICE Processing Center in Adelanto, California and Theo Lacy Facility in Orange, California.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

22.     Respondent Sandra Hutchens is the Sheriff of Orange County, California, which holds a contract with ICE to detain noncitizens. Respondent Hutchens is responsible for the operation of the Theo Lacy Facility in Orange, California, where Petitioner Hoang Trinh was detained.

23.     Respondent Doe 1 is the warden at the Adelanto ICE Processing Center, a private detention facility owned by The GEO Group, Inc., which holds a contract with ICE to detain noncitizens. Respondent Doe 1 is responsible for the operation of the Adelanto ICE Processing Center in Adelanto, California, where Petitioners Dai Diep, Bao Duong, and Sieu Nguyen are detained and where Petitioner Vu Ha was detained. On information and belief, the identity of the warden is not public information, and therefore, Petitioners intend to name this Respondent at a later time.

24.     All Respondents are sued in their official capacity.

## LEGAL BACKGROUND

### Detention

25.     Following a final order of removal, ICE is directed by statute to detain an individual for 90 days in order to effectuate removal.  8 U.S.C. § 1231(a)(2). This 90-day period, also known as "the removal period," generally commences as soon as a removal order becomes administratively final. *Id.* § 1231(a)(1)(A), § 1231(a)(1)(B).

26.     If ICE fails to remove an individual during the 90-day removal period, the law requires ICE to release the individual under conditions of supervision, including periodic reporting. *Id.* § 1231(a)(3) ("If the alien . . . is not removed within the removal period, the alien, pending removal, shall be subject to supervision."). Limited exceptions to this rule exist. Specifically, ICE "may" detain an individual beyond 90 days if the individual was ordered removed on criminal grounds or is determined to pose a danger or flight risk. *Id.* § 1231(a)(6). However, ICE's authority to detain an individual beyond the removal period under such

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

circumstances is not boundless. Rather, it is constrained by the constitutional requirement that detention "bear a reasonable relationship to the purpose for which the individual [was] committed." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citations omitted). Because the principal purpose of the post-final-order detention statute is to effectuate removal, detention bears no reasonable relation to its purpose if removal cannot be effectuated. *Id.* at 697.

27. The United States Supreme Court has accordingly construed Section 1231(a)(6) as authorizing post-final order detention only for a "period reasonably necessary to secure removal," a period that the Court determined to be presumptively six months. *Id.* at 699-701. After this six month period, if a detainee provides "good reason" to believe that his or her removal is not significantly likely in the reasonably foreseeable future, "the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. If the government cannot do so, the individual must be released.

28. However, detainees are entitled to release even before six months of detention, as long as removal is not reasonably foreseeable. *See* 8 C.F.R. § 241.13(b)(1) (authorizing release after 90 days where removal not reasonably foreseeable). Moreover, as the period of post-final-order detention grows, what counts as "reasonably foreseeable" must conversely shrink. *Zadvydas*, 533 U.S. at 701.

29. Even where detention meets the *Zadvydas* standard for reasonable foreseeability, detention violates the Due Process Clause unless it is "reasonably related" to the government's purpose, which is to prevent danger or flight risk. *See Zadvydas*, 533 U.S. at 700 ("[I]f removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor *potentially* justifying confinement within that reasonable removal period") (emphasis added); *id.* at 699 (purpose of detention is "assuring the alien's presence at the

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

moment of removal"); *id.* at 690-91 (discussing twin justifications of detention as preventing flight and protecting the community). Thus, due process requires a meaningful determination that Petitioners pose a danger or flight risk that would warrant post-final-order detention, regardless of whether their removal can be effectuated within a reasonable period of time.

30. The government's own regulations contemplate this requirement. They dictate that even after ICE determines that removal is reasonably foreseeable—and that detention therefore does not *per se* exceed statutory authority—the government must still determine whether continued detention is warranted based on flight risk or danger. *See* 8 C.F.R. § 241.13(g)(2) (providing that where removal is reasonably foreseeable, "detention will continue to be governed under the established standards" in 8 C.F.R. § 241.4).

31. The regulations, at 8 C.F.R. § 241.4, set forth the custody review process that existed even before the Supreme Court's decision in *Zadvydas*. This mandated process, known as the post-order custody review, requires ICE to conduct "90-day custody reviews" prior to expiration of the 90-day removal period and to consider release of individuals who pose no danger or flight risk, 8 C.F.R. § 241.4(e)-(f). Among the factors to be considered in these custody reviews are "ties to the United States such as the number of close relatives residing here lawfully"; whether the noncitizen "is a significant flight risk"; and "any other information that is probative of whether" the noncitizen is likely to "adjust to life in a community," "engage in future acts of violence," "engage in future criminal activity," pose a danger to themselves or others, or "violate the conditions of his or her release from immigration custody pending removal from the United States." *Id.*

32. Individuals with final orders who are released after a post-order custody review are subject to orders of supervision. 8 C.F.R. § 241.4(j). After an individual

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

has been released on an order of supervision, ICE cannot revoke such an order without cause or adequate legal process.

## FACTS

### *Vietnam's Repatriation Agreement with the United States*

33.     In 2008, after ten years of negotiation, Vietnam and the United States executed a repatriation agreement to govern the repatriation of certain Vietnamese immigrants with final orders of removal to Vietnam. Before this agreement was negotiated, Vietnam refused to repatriate the overwhelming majority of Vietnamese immigrants ordered removed from the United States.

34.     Vietnam and the United States stipulated that the repatriation agreement would be valid for five years from the date of its execution and then automatically extended for successive three-year terms thereafter absent at least six months written notice of an intent to terminate from one government to the other. *See* Agreement, Article 6, Entry into Force and Duration.

35.     Upon information and belief, the repatriation agreement has not been terminated or modified by either Vietnam or the United States.

36.     The repatriation agreement does not permit the repatriation of Vietnamese immigrants who came to the United States before July 12, 1995. It expressly stipulates that "Vietnamese citizens are not subject to return to Vietnam under this Agreement if they arrived in the United States before July 12, 1995." *See* Agreement, Article 2:  Removable Persons and Conditions of Acceptance.  The categorical exemption of pre-1995 Vietnamese immigrants from repatriation reflects humanitarian considerations related to the United States' role in the Vietnam War, the subsequent resettlement of Vietnamese refugees in America, and the continuing tension between the Vietnamese government and the Vietnamese refugees who were forced to flee their homes to avoid profound hardship and persecution after the war.

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

37.     The end of the Vietnam War caused hundreds of thousands of South Vietnamese refugees to flee to the United States by boat or by air to escape political persecution and death.  Other Vietnamese immigrants who resettled in America before July 12, 1995 were accepted to the United States to reunite with their loved ones or for other humanitarian reasons. The Vietnamese refugees who fled to the United States in the 20 years following the Vietnam War included those with close ties to the United States military or South Vietnamese government who feared for their lives under the new communist government and the hundreds of thousands of "Boat People" who poured out of Vietnam in rickety, wooden boats, desperate to escape communist re-education camps and other forms of political persecution.

38.     Abandoned children of American soldiers and Vietnamese women— known as "Amerasians" and pejoratively referred to as the "dust of life" in Vietnam—were also among the waves of Vietnamese immigrants who resettled in the United States before July 12, 1995. In addition to growing up fatherless, Amerasians were roundly shunned by Vietnamese society for being mixed race and born out of wedlock and in many cases rejected by their own mothers. These punishing circumstances set Amerasians on a trajectory of homelessness and abject poverty. With physical features that betrayed them as the children of American soldiers, Amerasians became even more vulnerable to mistreatment after communist takeover of Vietnam in 1975, as they carried the faces of those who had fought against the North Vietnamese. After 1975, many were imprisoned in labor or reeducation camps. Recognizing the extreme persecution faced by Amerasians and acknowledging its responsibility towards these half-American children, the United States in the 1980s enacted laws that gave thousands of Vietnamese Amerasians the opportunity to leave behind a country that never accepted them in order start anew in the homeland of their fathers.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

39.    These early Vietnamese refugees to America lacked resources—formal education, English-language proficiency, a supportive ethnic community, or mental health services to help cope with war-related trauma—to ease their transition to an unfamiliar country. In addition, ad hoc resettlement practices dispersed these refugees, often pushing them into economically deteriorating, high-crime neighborhoods with under-resourced schools. While many Vietnamese refugees beat the odds stacked against them to pursue higher education, start successful small businesses, and build families in their new homeland, some were convicted of crimes that resulted in orders of removal.

40.    Vietnam's longstanding practice of refusing repatriation has for years protected pre-1995 Vietnamese immigrants from being removed to the country they fled to escape starvation, violence, and death. The exclusion of pre-1995 Vietnamese immigrants from the repatriation agreement is central to maintaining human rights protections for this population. According to the U.S. Department of State's 2016 Human Rights Report on Vietnam, the most significant human rights problems in Vietnam are severe government restrictions of citizens' political rights.[2] Most pre-1995 Vietnamese immigrants are ex-citizens of South Vietnam, a country that ceased to exist after North Vietnam prevailed in the war in April 1975, leaving hundreds of thousands of South Vietnamese stateless. Many of those who were not immediately evacuated from Vietnam were incarcerated for months or years in re-education prisons, where they endured political indoctrination and forced physical labor because of their perceived threat and lack of loyalty to the new communist government.

41.    The repatriation agreement has also profoundly impacted the way pre-1995 Vietnamese immigrants have handled their removal proceedings. Many of

---

[2] U.S. Dep't of State, *Vietnam 2016 Human Rights Report*, https://www.state.gov/documents/organization/265598.pdf.

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

these immigrants, who faced the possibility of years in detention while litigating their removal cases at great financial cost which most could not afford, chose instead to forego the pursuit of meritorious defenses based on the reasonable expectation that they would not be deported to Vietnam.

42.     Although the repatriation agreement officially opened the door for repatriation of Vietnamese immigrants who arrived to the United States on or after July 12, 1995, Vietnam continues to accept only a very limited number of persons for repatriation each year and still regularly refuses to issue travel documents. Based on publicly available information from ICE and from the Executive Office for Immigration Review, from 2008 to 2016, Vietnam only accepted an average of 13 percent of individuals ordered removed to Vietnam each year.  On information and belief, a negligible percentage of the removals to Vietnam have been removals of pre-1995 Vietnamese immigrants, consistent with the repatriation agreement.

43.     Because of the exclusion of pre-1995 immigrants from the repatriation agreement and the overall lack of cooperation from the Vietnamese government, the United States government has been unable to carry out most orders of removal to Vietnam. Consequently, ICE has for years routinely released pre-1995 Vietnamese immigrants with final orders of removal from immigration custody upon or even before expiration of the 90-day removal period. Thousands of Vietnamese returned to their families, their jobs, and their communities and built productive, peaceful lives following completion of their removal proceedings.

44.     Currently, between 8,000 and 10,000 Vietnamese Americans are living in the United States with final orders of removal. According to ICE estimates, 6,200 of the 7,700 Vietnamese who had final orders of removal in 2008 came to the United States before 1995, indicating that the vast majority of the 8,000 to 10,000 Vietnamese with final orders of removal today are pre-1995 Vietnamese immigrants.

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Unlawful Detention in Violation of the Repatriation Agreement*

45.    Signed in January 2017, Executive Order 13768 announced a massive expansion of immigration enforcement. Exec. Order No. 13,768, 82 Fed. Reg. 8799 (Jan. 25, 2017), The order identified "recalcitrant" countries that refuse repatriation as a problem area and directed the Secretary of Homeland Security and the Secretary of State to implement sanctions on these countries. *Id.* § 12.

46.    ICE soon after began conducting widespread arrests of immigrants from "recalcitrant" countries, including Iraq, Cambodia, and Somalia, without requisite evidence that these countries would repatriate the individuals arrested, often followed by prolonged detention without due consideration to whether detention was necessary to effectuate their removal. Immigrants from these countries filed class action lawsuits around the country challenging ICE's unlawful denial of due process to their communities.

47.    ICE likewise aggressively stepped up enforcement against the Vietnamese community in 2017. It ended its practice of releasing pre-1995 Vietnamese immigrants from detention promptly following their orders of removal. Instead, deportation officers began holding pre-1995 Vietnamese immigrants for longer than 90 days, and often longer than 180 days, citing a directive from ICE Headquarters.

48.    In March 2017, ICE also began re-arresting pre-1995 Vietnamese immigrants with final orders of removal whom it had previously released. Many were transported to Krome Detention Center in Miami, Florida to be interviewed by the Vietnamese Consulate between March 20 and 31, 2017.

49.    On September 21, 2017, the United States submitted 95 cases of Vietnamese immigrants with final orders of removal to the Vietnamese government to consider for repatriation.

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

50.    In October 2017, ICE again carried out mass arrests of Vietnamese immigrants with final orders of removal who had returned to their communities on orders of supervision—including pre-1995 Vietnamese immigrants. Arrests occurred in several states across the country, including Georgia, Pennsylvania, Texas, Colorado, and California. Many of the individuals arrested were transported to Stewart Detention Center in Lumpkin, Georgia to be interviewed by the Vietnamese Consulate between the end of October and beginning of November, 2017. Afterwards, they were transported to various detention centers for continued detention.

51.    In defense of ICE's abrupt change in policy and violation of the repatriation agreement, the United States government claims that Vietnam is now "willing to consider" repatriation of Vietnamese who came to the United States before July 12, 1995. However, the government has not substantiated this claim with any official document memorializing Vietnam's alleged change in policy, and the repatriation agreement remains in effect. Further, the Vietnamese government's conduct does not signal any meaningful departure from its categorical refusal to repatriate pre-1995 Vietnamese immigrants, despite continued pressure from the United States.

52.    On information and belief, the Vietnamese government has only issued travel documents to seven pre-1995 Vietnamese immigrants. Moreover, on information and belief, Vietnam will not accept the deportation of any pre-1995 individuals without an interview. Some Petitioners and class members have never been interviewed by the Vietnamese Consulate and are therefore not being considered for repatriation, yet remain in ICE custody.

53.    During interviews conducted by the Consulate, Vietnamese officials questioned individuals about whether they have any family living in Vietnam who can support them if deported; whether they have any family living in the United

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

States who will be impacted if deported; and whether they are willing to accept their deportation. On information and belief, Vietnam is extremely reluctant to issue travel documents to individuals like Petitioners who have no family in Vietnam; whose families in the United States will suffer hardship as a result of their deportation; and/or who do not wish to return to Vietnam.

54.     Despite the United States government's vague representations, the Vietnamese government's conduct does not indicate that it truly intends to repatriate the hundreds of pre-1995 Vietnamese whom ICE is currently detaining or will likely detain under its current detention campaign.

55.     ICE lacks any particularized evidence that Vietnam will accept Petitioners' or class members' repatriation. Despite this lack of proof that Petitioners' and class members' repatriation is significantly likely in the reasonably foreseeable future, ICE has detained Petitioners and class members more than 90 days or 180 days beyond the date of their removal orders.

56.     Furthermore, Petitioners and class members are being detained for more than 180 days without an individualized hearing before a neutral decision maker to assess whether detention is warranted due to danger or flight risk. This includes class members who for years consistently and reliably reported to ICE as required under their orders of supervision.

57.     To the extent that ICE has been conducting any 90-day post-order custody reviews for Petitioners and class members, they have been perfunctory, resulting in boilerplate decisions that merely rubberstamp continued detention. Some class members have been told by ICE employees that Vietnamese with final orders of removal will continue to be detained until the Vietnamese government issues a travel document, though some requests for travel documents have been pending since late October or early November 2017 and others since March 2017. On information and belief, the refusal to release any pre-1995 Vietnamese immigrants

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

after 90 days is driven by an ICE Headquarters policy being uniformly implemented across the United States.

## CLASS ALLEGATIONS

58.    Petitioners bring this action on behalf of themselves and all other similarly situated persons pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), and as a representative habeas class action for similarly situated persons pursuant to a procedure analogous to Rules 23(a) and 23(b)(2). *See Ali v. Ashcroft*, 346 F.3d 873, 889-91 (9th Cir. 2003) (holding that the district court did not exceed its habeas jurisdiction in certifying a nationwide habeas class), *withdrawn and amended on other grounds on reh'g*, *Ali v. Gonzales*, 421 F.3d 795 (9th Cir. 2005); *see also Geraghty v. U.S. Parole Commission*, 429 F. Supp. 737, 740 (M.D. Pa. 1977) (noting that "procedures analogous to a class action have been fashioned in habeas corpus actions where necessary and appropriate").

59.    Petitioners seek to represent the following classes: (1) all Vietnamese nationals who arrived in the United States before July 12, 1995 and who have been or will be detained by ICE for more than 90 days after receiving final orders of removal  ("90-Day Class"); (2) all Vietnamese nationals who arrived in the United States before July 12, 1995 and who have been or will be detained by ICE for more than 180 days after receiving final orders of removal ("180-Day Class"); and (3) all Vietnamese nationals who arrived in the United States before July 12, 1995, who are subject to final orders of removal, and who have been or will be detained by ICE for more than 180 days without a bond hearing to determine whether their prolonged detention is justified ("Prolonged Detention Class").

60.    Members of each proposed class are so numerous that joinder is impracticable. Petitioners identified at least 45 pre-1995 Vietnamese immigrants with final orders of removal who, at the time this action was filed on February 22, 2018, were in ICE custody in just 20 of ICE's 111 detention facilities. At least 37 of the 45 had been detained for more than 90 days after receiving removal orders; 18 of

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

those 37 had been detained for more than 180 days after receiving removal orders. The total numbers of 90-Day Class members and 180-Day Class members were likely much higher. Since the filing of this action, Petitioners have learned of additional pre-1995 Vietnamese immigrants who have reached 90 or 180 days of post-order detention. The Prolonged Detention Class is at least as numerous as the 180-Day Class because all individuals who have reached 180 days of post-order detention have also exceeded 180 days of total detention. Further, 8,000 to 10,000 Vietnamese immigrants in the United States currently have final orders of removal. ICE's aggressive detention of these individuals as part of a Headquarters-driven decision means the classes will continue to grow.

61.    Petitioners' claims are typical of the claims of the proposed classes. In addition, Petitioners will fairly and adequately represent the interests of all members of the proposed classes. Petitioners seek relief that is identical to the relief sought by members of each class, and they have no interests that are adverse to other class members. Petitioners have retained counsel who have experience in immigration law and class action litigation and will adequately represent the interests of the classes.

62.    Multiple questions of law and fact are common to members of the proposed classes, including:

a.    Whether the 90-Day Class members and 180-Day Class members have shown good reason to believe that their removal is not reasonably foreseeable;

b.    Whether Respondents have sufficient evidence that the 90-Day Class members' and 180-Day Class members' removal is reasonably foreseeable to justify continued detention given that they are specifically excluded from repatriation under the repatriation agreement; and

c.    Whether Respondents have afforded Prolonged Detention Class members individualized determinations of the need for detention that satisfy Section 1231 and due process.

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

63.     Respondent's conduct and refusal to act apply generally to the 90-Day Class, 180-Day Class, and Prolonged Detention Class, thereby making the final injunctive relief and declaratory relief sought by the Petitioners appropriate with respect to the classes as a whole.

## CLAIMS FOR RELIEF

### *Count One: Unlawful Detention Where Removal Is Not Reasonably Foreseeable*

64.     The foregoing allegations are realleged and incorporated herein.

65.     Post-removal order detention violates Section 1231 where removal is not significantly likely to occur in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 678. Detention under these circumstances also violates constitutional due process.

66.     The removal of Petitioners, 90-Day Class members, and 180-Day Class members is not significantly likely to occur in the reasonably foreseeable future because they are specifically excluded from repatriation under the repatriation agreement.

67.     The 90-Day Class members' *Zadvydas* claim is ripe because the six-month period set forth in *Zadvydas* is a rebuttable presumption, not a rule. The presumption is rebutted by a repatriation agreement that expressly excludes pre-1995 Vietnamese immigrants from repatriation, along with Vietnam's historical refusal to accept them.

68.     Through the repatriation agreement and Vietnam's historical practice, Petitioners and class members have made their initial showing under *Zadvydas* of "good reason to believe" that their removal is not reasonably foreseeable. *Id*. at 701.

69.     Petitioners, 90-Day Class members, and 180-Day Class members have shifted the burden to Respondents to produce individualized evidence that their removal is reasonably foreseeable. Respondents lack such evidence, yet continue to

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

detain Petitioners, 90-Day Class members, and 180-Day Class members in violation of Section 1231 and constitutional due process.

70.    Petitioners, 90-Day Class Members, and 180-Day Class members are entitled under the law to immediate release on orders of supervision.

### *Count Two: Unlawful Detention Without Determinations of Danger and Flight Risk*

71.    The foregoing allegations are realleged and incorporated herein.

72.    Even when removal is reasonably foreseeable, detention violates Section 1231 and due process under the United States Constitution unless it is reasonably related to the government's purposes of preventing flight and protecting the community. *Zadvydas*, 533 U.S. at 690-91.

73.    Respondents are subjecting Petitioners and Prolonged Detention Class members to over 180 days of detention without any individualized determination that they pose a danger or flight risk that would justify their detention.

74.    The only procedure the government has provided—administrative post-order custody reviews—is inadequate to satisfy the requirements of due process. Moreover, the government is not meaningfully conducting these post-order custody reviews in compliance with its own regulations but is merely rubberstamping continued detention with respect to the Petitioners and Prolonged Detention Class members as a whole.

75.    Respondents may not continue to detain Petitioners and Prolonged Detention Class members without individualized determinations by impartial adjudicators of whether detention is justified based on danger or flight risk.

### **PRAYER FOR RELIEF**

76.    WHEREFORE, Petitioner respectfully requests that the Court grant the following relief:

a.    Assume jurisdiction over this matter;

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

b.      Certify this matter as a class action, name Petitioners Vu Ha, Long Nguyen, Ngoc Hoang, and Sieu Nguyen as class representatives of the 90-Day Class, name Petitioners Hoang Trinh, Dai Diep, and Bao Duong as class representatives of the 180-Day Class, name Petitioners Hoang Trinh, Vu Ha, and Bao Duong as class representatives of the Prolonged Detention Class, and appoint Petitioners' counsel as class counsel;

c.      Declare that Respondents have violated the rights of the classes;

d.      Order Respondents to release from detention Petitioners and all 90-Day Class members and 180-Day Class members for whom Respondents lack individualized evidence that removal is significantly likely to occur in the reasonably foreseeable future;

e.      Order Respondents to release Petitioners and all Prolonged Detention Class members from detention absent an individualized determination by an impartial adjudicator that their detention is justified based on danger or flight risk, which cannot be sufficiently addressed by alternative conditions of release and/or supervision;

f.      Award Petitioners reasonable attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, and on any other basis justified under law; and

g.      Grant any other and further relief as the Court deems just and proper.

Dated: May 11, 2018                Respectfully submitted,

                                   /S/ Tuan V. Uong
                                   Tuan V. Uong
                                   Farah Tabibkhoei
                                   Christopher M. Butler
                                   Patil T. Derderian
                                   REED SMITH, LLP

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

/S/ Phi U. Nguyen
Phi U. Nguyen
ASIAN AMERICANS ADVANCING JUSTICE-ATLANTA

2

3

/S/ Laboni Hoq
Laboni Hoq
Christopher Lapinig
ASIAN AMERICANS ADVANCING JUSTICE-LA

4

5

/S/ Jingni Zhao
Jingni (Jenny) Zhao
Anoop Prasad
Kevin Chun Hoi Lo
Melanie Chun-Yu Kim
Winifred Kao
ASIAN AMERICANS ADVANCING JUSTICE-ASIAN LAW
CAUCUS

6

7

8

9

10

/S/ Jesse A. Davis III
Jesse A. Davis III
DAVIS ADAMS, LLC
*Attorneys for Petitioners*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HABEAS CORPUS CLASS ACTION PETITION AND CLASS
ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF