UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| HOANG TRINH, VU HA, LONG NGUYEN, NGOC HOANG, DAI DIEP, BAO DUONG, and SIEU NGUYEN, on behalf of themselves and those similarly situated,<br><br>Petitioners,<br><br>v.<br><br>THOMAS D. HOMAN, KIRSTJEN M. NIELSEN, JEFFERSON B. SESSIONS III, DAVID MARIN, SANDRA HUTCHENS, and JOHN DOE,<br><br>Defendants. | Case No.: SACV 18-00316-CJC(GJSx)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND HABEAS RETURN** |

## I. INTRODUCTION

The seven named Petitioners bring this Habeas Corpus Petition and Class Action Complaint on behalf of themselves and a putative class of Vietnamese citizens who

immigrated to the United States before 1995. (Dkt. 27 [First Amended Habeas Corpus Petition and Class Action Complaint, hereinafter "FAC"] ¶¶ 1–4.) Petitioners allege that in 2017, U.S. Immigration and Customs Enforcement ("ICE") began subjecting these "pre-1995 Vietnamese immigrants" to prolonged, post-removal order detention despite the purportedly remote possibility of their removal to Vietnam. (*Id.* ¶ 4.)

Petitioners bring two causes of action for habeas relief, declaratory relief, and injunctive relief. (*Id.* ¶ 76.) In Count One, Petitioners assert that their post-removal order detention violates federal immigration law, 8 U.S.C. § 1231, and constitutional due process where removal is not likely to occur in the foreseeable future. (*Id.* ¶¶ 64–70.) In Count Two, Petitioners assert that even where removal is reasonably foreseeable, their prolonged detention violates section 1231 and constitutional due process when it is "without any individualized determination that they pose a danger or flight risk." (*Id.* ¶¶ 72–75.)

Petitioners bring these causes of action on behalf of themselves and three putative classes: (1) all pre-1995 Vietnamese immigrants who have been or will be detained by ICE for more than 90 days after receiving removal orders ("90-Day Class"), (2) all pre-1995 Vietnamese immigrants who have been or will be detained by ICE for more than 180 days after receiving removal orders ("180-Day Class"), and (3) all pre-1995 Vietnamese immigrants who have been or will be detained by ICE for more than 180 days without a bond hearing ("Prolonged Detention Class"). (*Id.* ¶ 59.)

Before the Court is Defendants' hybrid motion to dismiss and habeas return. (Dkt. 56 [hereinafter "Mot."].) For the following reasons, the motion is **DENIED**.[1]

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for September 10, 2018, at 1:30 p.m. is hereby vacated and off calendar.

## II. BACKGROUND

Petitioners are citizens of Vietnam who immigrated to the United States before July 12, 1995. (FAC ¶ 1.) Petitioners became lawful permanent residents years ago but, based on criminal convictions, lost their green cards and were ordered removed. (*Id*. ¶ 2.) Petitioners allege that until recently, ICE had a longstanding practice of detaining pre-1995 Vietnamese immigrants for no longer than 90 days. (*Id*. ¶ 3.) This practice was purportedly implemented because a 2008 diplomatic agreement between the United States and Vietnam provides that Vietnamese citizens who arrived to the United States before July 12, 1995 are not subject to return to Vietnam. (*Id*. ¶¶ 2, 36; Ex. A, Art. 2, ¶ 2.) The parties seemingly do not dispute that the 2008 agreement is still in effect.[2]

Petitioners allege that in 2017, ICE departed from this longstanding practice and began subjecting pre-1995 Vietnamese immigrants to prolonged periods of detention. (*Id*. ¶ 4.) ICE also purportedly began re-detaining, without notice, pre-1995 Vietnamese immigrants who had previously been released from detention and were living on orders of supervision. (*Id*.) On February 22, 2018, four of the named Petitioners filed this action challenging their detention. (Dkt. 1.) On April 30, 2018, the Government moved to dismiss the case, arguing it was moot because the four named Petitioners had since been released from custody. (Dkt. 24.) On May 11, 2018, Petitioners filed the operative First Amended Habeas Corpus Petition and Class Action Complaint, adding three new Petitioners who were, at the time, in immigration detention. (FAC.) All seven named Petitioners, described below, have now been released from custody.

---

[2] The agreement can be accessed on the U.S. Department of State's website at https://www.state.gov/documents/organization/108921.pdf. The agreement states it will be valid for five years and extended automatically for successive three-year terms thereafter, unless written notice not to extend is given by either country. (TAC Ex. A, Art. 6.) Petitioners allege and Defendants do not contest that the agreement has not been terminated or modified by either country. (TAC ¶ 35; *see generally* Mot.)

      Hoang Trinh, the first named Petitioner, is a resident of Orange County, California, who legally entered the United States as a four-year-old refugee in 1980. (*Id.* ¶ 11.) He became a lawful permanent resident, married, and now has two children ages thirteen and eighteen. (*Id.*) Hoang's wife, two children, parents, and six sisters are all U.S. citizens. (*Id.*) In early 2015, Hoang was arrested on a drug charge, for which he served one year in prison. (*Id.*) Hoang was later incarcerated for alleged possession of a marijuana plant before being transferred to ICE custody in June 2017. (*Id.*) He was ordered removed on July 27, 2017. (*Id.*) He remained in immigration detention until April 16, 2018, when he was released on an order of supervision. (*Id.*) He did not receive a bond hearing. (*Id.*)

      Petitioner Vu Ha is a resident of Orange County, California, who legally entered the United States as a ten-year-old refugee in 1990 and became a lawful permanent resident shortly thereafter. (*Id.* ¶ 12.) His parents, sister, and daughter are U.S. citizens. (*Id.*) He was arrested three times as a young adult between 2000 and 2005, once being for robbery. (*Id.*) In 2017, he was arrested and detained for failure to pay a citation for driving without a license. (*Id.*) He was transported from county jail to ICE custody in May 2017 and was ordered removed on September 19, 2017. (*Id.*) He remained in immigration detention until April 13, 2018, when he was released on an order of supervision. (*Id.*) He did not receive a bond hearing. (*Id.*)

      Petitioner Long Nguyen is a resident of Charleston, South Carolina, who legally entered the United States as an eleven-year-old refugee in 1987 and became a lawful permanent resident the following year. (*Id.* ¶ 13.) Nguyen's wife and five children are all U.S. citizens, and his parents are lawful permanent residents. (*Id.*) Nguyen and his wife have worked together for many years at a nail salon his wife manages. (*Id.*) In 2006, he was convicted of a nonviolent felony drug offense. (*Id.*) In 2010 or 2011, he was detained after traveling abroad and ordered removed on April 18, 2012. (*Id.*) He was released on an order of supervision after Vietnam refused to accept his deportation.

(*Id.*)  Although he reliably reported to ICE for years under his order of supervision, he was pulled over on his way to work and detained from October 19, 2017 to March 23, 2018, when he was again released on an order of supervision.  (*Id.*)

Petitioner Ngoc Hoang is a resident of Gwinnett County, Georgia, who legally entered the United States in 1990.  (*Id.* ¶ 14.)  Hoang was married to a U.S. citizen with whom he has four children, all under the age of eighteen.  (*Id.*)  Hoang works as a nail salon technician.  (*Id.*)  In 1994, he pled guilty to check fraud and in 2010, he was placed on probation for simple assault and simple battery.  (*Id.*)  He was ordered removed on December 12, 2012 and released on an order of supervision approximately two months later.  (*Id.*)  Over the next five years, Hoang complied with the requirements of that order.  (*Id.*)  But on November 6, 2017, he was unexpectedly re-arrested by ICE officers at his home.  (*Id.*)  He was detained until April 23, 2018, when he was released on an order of supervision.  (*Id.*)

Petitioner Sieu Nguyen is a resident of Sacramento, California, who escaped Vietnam when he was three years old.  (*Id.* ¶ 15.)  Sieu and his family were accepted as refugees in September 1989, and he became a lawful permanent resident shortly thereafter.  (*Id.*)  His parents and seven siblings are all U.S. citizens.  (*Id.*)  Sieu was convicted of robbery in 2007 and burglary and receipt of stolen property in 2010.  (*Id.*)  After serving time in prison, he was transferred to a detention facility.  (*Id.*)  He was ordered removed on December 19, 2017, (*id.*), and has since been released from custody.

Petitioner Dai Diep is a resident of Santa Ana, California, who legally entered the United States as a refugee in 1995 and became a lawful permanent resident the following year.  (*Id.* ¶ 16.)  He arrived with his mother, stepfather, and two half-siblings, all of whom are now U.S. citizens.  (*Id.*)  In November 2015, he pled guilty to second-degree robbery, second-degree burglary, and vandalism, for which he was sentenced to two

years of imprisonment.  (*Id*.)  In April 2017, he was released on parole from state prison and transferred to ICE custody.  (*Id*.)  He was ordered removed on October 26, 2017, (*id*.), and has since been released from custody.

Petitioner Bao Duong is a resident of San Diego, California, who legally entered the United States as a refugee in 1980 and became a lawful permanent resident the same year.  (*Id*. ¶ 17.)  His parents are lawful permanent residents and his three sisters are U.S. citizens.  (*Id*.)  In 2013, Duong was convicted of robbery and imprisoned for three years.  (*Id*.)  He was released on parole in June 2016 and arrested for alleged possession of marijuana in September 2017.  (*Id*.)  He was transferred to ICE custody and ordered removed from the United States on November 14, 2017.  (*Id*.)  He has since been released from custody.

Petitioners allege that ICE's abrupt change in practices with respect to the named Petitioners and similarly situated individuals is unlawful because there is no evidence that Vietnam will now accept the return of pre-1995 Vietnamese immigrants.  (*Id*. ¶ 54.)  Defendants argue that ICE's change in practices was based on a "new understanding" between the United States and Vietnam regarding the removal of pre-1995 immigrants.  (Mot. at 14.)  Defendants assert that pursuant to that understanding, ICE has removed eleven pre-1995 individuals to Vietnam since July 2017.  (Dkt. 37-1 [Declaration of Michael Bernacke, hereinafter "Bernacke Decl."] ¶ 6; Dkt. 56-1 [Second Declaration of Michael Bernacke, hereinafter "Bernacke Decl. II"] ¶ 6.)

On July 2, 2018, Defendants filed an *ex parte* application to sever Petitioners' habeas and civil rights claims.  (Dkt. 53.)  The Court denied the application because both of Petitioners' claims "seek habeas relief, along with injunctive and declaratory relief."  (Dkt. 54 at 4.)  On July 20, 2018, Defendants filed the instant hybrid motion to dismiss and habeas return.  (Dkt. 56.)  On August 28, 2018, Petitioners filed a motion for

certification of its three putative classes under Federal Rule of Civil Procedure 23(b)(2). (Dkt. 65.)

## III. DISCUSSION

Defendants move to dismiss Petitioners' claims as moot under Federal Rule of Civil Procedure 12(b)(1) because the seven named Petitioners have been released from custody. In the alternative, Defendants move to deny habeas relief on the merits and dismiss the non-habeas claims for failure to state a claim under Rule 12(b)(6). Defendants also argue that Petitioners' claims with respect to the putative 90-Day Class members are premature. The Court considers each argument in turn.

### A. Mootness

Defendants first move to dismiss both of Petitioners' claims as moot. (Mot. at 10.) Defendants argue that this action does not involve a live case or controversy because the seven named Petitioners have been released from detention, and no exception to mootness applies. (*Id*. at 11.) Petitioners contend that their action continues to present a live case or controversy despite Petitioners' release. (Opp. at 7–10.) Petitioners also argue that even if their habeas claims are moot, the "inherently transitory" exception to mootness applies. The inherently transitory exception applies where a class representative's claims will likely expire before the court can certify a class and other similarly situated individuals will continue to suffer the same injury. *Pitts v. Terrible Herbst, Inc*., 653 F.3d 1081, 1090 (9th Cir. 2011). When a claim is inherently transitory, certification of the class "relat[es] back" to the time the complaint was filed to "preserve the merits of the case for judicial resolution." *County of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991). Because the Court finds that Petitioners' claims are not moot, it need not address whether the inherently transitory exception to mootness applies.

1    Mootness is properly raised in a Rule 12(b)(1) motion to dismiss. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). For a court to have Article III standing to hear a case, there must be an actual case or controversy. U.S. Const. art. III, § 2, cl. 1. The plaintiff must allege a concrete injury in fact that is fairly traceable to the defendant's unlawful conduct and that is likely redressable by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). If circumstances arise such that issues are no longer "live" or the parties no longer hold a "legally cognizable interest" in the action, the court must dismiss the action as moot. *Powell v. McCormack*, 395 U.S. 486, 496 (1969). However, "a case is not moot if *any* effective relief may be granted," and the party asserting mootness "bears a heavy burden." *Karuk Tribe of Calif. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012).

Petitioners' claims continue to present a live controversy despite the named Petitioners' release from detention. A habeas petition continues to present a live controversy after a petitioner's release if there is "some remaining collateral consequence that may be redressed by success on that petition." *Abdala v. Immigration & Naturalization Serv.*, 488 F.3d 1061, 1064 (9th Cir. 2007), *cert. denied* (internal citations and quotations omitted). Because Plaintiffs may be re-detained at any time, they retain a live interest in habeas relief. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1117 (9th Cir. 2009) (ICE's release of petitioner did not moot habeas petition where there was "no meaningful substantive limit" on ICE's ability to re-detain him); *Clark v. Martinez*, 543 U.S. 371, 376 n.3 (2005) (petitioner's unlawful detention claim continued to involve a "live case or controversy" because his release could be revoked in ICE's discretion).

Defendants rely on *Abdala v. INS* for the assertion that "a habeas petition does not continue to present a live controversy once the petitioner is released from custody." (Mot. 11.) However, Defendants overstate *Abdala*'s holding. In *Abdala*, the Ninth Circuit held that the habeas petition challenging *only* the length of detention became

moot when the petitioner was deported, not simply released in ICE's discretion, because the court could no longer provide any relief. *Id*. at 1065. The Ninth Circuit in *Abdala* stated, however, that even "[d]eportation from the United States after filing a habeas petition does not necessarily moot a petitioner's claim." *Id*. at 1063. In the other cases that Defendants cite, the petitioners had been deported or had already received the relief they sought. *See Qalinle v. Donahue*, 2016 WL 674939, at *2 (D. Ariz. Jan. 29, 2016) (characterizing petitioner's claim as moot because the relief he requested, an order of supervision, could not be granted where petitioner was already released from custody); *Martinez-Reyes v. Burns*, 2011 WL 1375293, at *2 (C.D. Cal. Mar. 18, 2011) (holding that because petitioner's removal to Mexico meant he was released from ICE custody, he "received the only relief [the] Court might provide him" under his habeas petition). Here, by contrast, Petitioners do not seek release from detention alone. Petitioners also seek declaratory relief that their removal to Vietnam is not reasonably foreseeable and that they are entitled to individualized bond hearings. The Court can still provide Petitioners relief. Defendants have failed to meet their "heavy burden" of showing Petitioners' claims are moot. *See Karuk Tribe of Calif*., 681 F.3d at 1017.

### B.     Failure to State a Claim

Defendants next move to dismiss Petitioners' claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Mot. at 13.)[3] A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant

---

[3] Defendants filed a hybrid motion to dismiss and habeas return, seeking dismissal of the non-habeas claims for failure to state a claim and denial of habeas relief on the merits. (Mot. at 1.) To the extent that Defendants ask the Court to sever Petitioners' claims into their habeas and non-habeas components, the Court has already declined to do so. (*See* Dkt. 54 [order denying Defendants' *ex parte* application].) And for the Court to reach the merits of the habeas claims, an evidentiary hearing is required because there is a factual dispute regarding whether Petitioners face a significant likelihood of removal in the foreseeable future. *Owino v. Napolitano*, 575 F.3d 952, 956 (9th Cir. 2009).

will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  The district court may also consider additional facts in materials that the district court may take judicial notice, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled in part on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotations omitted)).  Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

    **1.**    **Count One: Likelihood of Removal**

In Count One, Petitioners assert that their post-removal order detention violates federal immigration law and constitutional due process where their removal is not likely to occur in the reasonably foreseeable future.  (FAC ¶¶ 64–70.)   Petitioners assert Count

One on behalf of all three putative classes. Defendants argue that Count One does not state a claim because Petitioners have failed to establish that pre-1995 Vietnamese immigrants are not likely to be removed in the foreseeable future. (Mot. at 13–15.) Defendants also argue that Count One as to the 90-Day Class is unripe. (*Id*. at 16–18).

Petitioners' post-removal order detention is governed by federal immigration law, 8 U.S.C. § 1231. Section 1231 provides that after an alien is ordered removed, the Government "shall remove the alien from the United States within a period of 90 days." *Id*. § 1231(a)(1)(A). During the 90-day removal period, the Government "shall detain the alien." *Id*. § 1231(a)(2). Once the 90-day removal period ends, the Government may continue to detain certain aliens, such as Petitioners, whose criminal convictions render them removable. *Id*. § 1231(a)(6). Section 1231(a)(6), however, does not authorize the Government to detain an alien indefinitely. *Zadvydas v. Davis*, 533 U.S. 678, 688–702 (2001). Rather, the statute, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal." *Id*. at 689. In *Zadvydas*, the Supreme Court held that six months is a "presumptively" reasonable period of detention. *Id*. at 701. If after six months, the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must provide sufficient evidence to rebut the noncitizen's showing of indefinite detention. *Id*.

Petitioners argue that their removal is unlikely to occur in the reasonably foreseeable future because the 2008 United States-Vietnam diplomatic agreement "expressly excludes pre-1995 Vietnamese immigrants from repatriation." (FAC ¶ 67.) That agreement provides that "Vietnamese citizens are not subject to return to Vietnam under this agreement if they arrived in the United States before July 12, 1995." (*Id*. Ex. A, Art. 2, ¶ 2.) Petitioners assert that ICE has had a longstanding practice of releasing pre-1995 Vietnamese immigrants under removal orders on the basis of this agreement.

(FAC ¶ 3.) Because these immigrants are "not subject to return to Vietnam," Petitioners contend that ICE has typically released them on orders of supervision. (*Id*.) Although ICE has since departed from that practice and has begun subjecting pre-1995 Vietnamese immigrants to longer post-removal order detention, (*id*. ¶ 4), Petitioners argue that removal is still not reasonably foreseeable for two reasons. First, Petitioners argue that the 2008 repatriation agreement is still in effect. Second, Petitioners argue that Vietnam's past practice of refusing these immigrants shows it will continue to refuse repatriation of the "hundreds of pre-1995 Vietnamese [immigrants] whom ICE is currently detaining or will likely detain under its current detention campaign." (*Id*. ¶¶ 51, 54.)

Petitioners have alleged sufficient facts to state a claim for indefinite detention that is "plausible on its face." *See Twombly*, 550 U.S. at 570. Under *Zadvydas*, a noncitizen's detention under section 1231(a)(6) is limited to a "period reasonably necessary to bring about that alien's removal." 533 U.S. at 689. Here, Petitioners allege that their detention is unlawful because there is no likelihood of removal in the reasonably foreseeable future. In support of this allegation, Petitioners allege that due to the 2008 repatriation agreement still in effect, Vietnam has not accepted the great majority of pre-1995 immigrants. (FAC ¶¶ 51, 54.) According to ICE's estimates, 6,200 of the 7,700 Vietnamese immigrants subject to final orders of removal in 2008 immigrated to the United States before 1995. (*Id*. ¶ 44.) Although Petitioners acknowledge that a small number of pre-1995 Vietnamese immigrants have since been removed, that number pales in comparison to the estimated 6,200 pre-1995 Vietnamese immigrants who are either in detention or face the risk of future detention. (*See id*. ¶¶ 44, 52.) Named Petitioners Vu Ha and Hoang Trinh, for instance, were both held in immigration detention for approximately 300 days, far past the presumptively reasonable six-month period in *Zadvydas*. (*See id*. ¶¶ 11, 12.)

//

     Defendants nevertheless argue that Plaintiffs have failed to state a claim under Count One because recent developments in United States-Vietnam relations indicate that removal to Vietnam is no longer unlikely in the foreseeable future.  Defendants assert that the 2008 United States-Vietnam diplomatic agreement provides that citizens are not subject to return to Vietnam *under the terms of that agreement* only.  (Mot. at 14 [citing FAC Ex. A, Art. 2, ¶ 2].)  The United States may however, "under agreements or understandings other than the 2008 amendment," still remove pre-1995 Vietnamese immigrants.  (Mot. at 14.)  Defendants assert that the United States and Vietnam reached one such understanding in mid-2017, pursuant to which ICE has removed eleven pre-1995 Vietnamese immigrants since July 2017.  (Mot. at 14 [citing Bernacke Decl. ¶ 6; Bernacke Decl. II ¶ 6].)  For these assertions, Defendants rely on sworn affidavits by an ICE official. (*See* Bernacke Decl. ¶ 1.)

     On a motion to dismiss under Federal Rule 12(b)(6), however, the Court "may not consider any material beyond the pleadings."  *Friedman v. AARP, Inc.*, 855 F.4d 1047, 1051 (9th Cir. 2017).  Defendants argue that the pleadings standards under Rule 12 are "inconsistent with the standards and procedures" that the Supreme Court outlined in *Zadvydas*.  (Dkt. 62 [Reply] at 5.)  Defendants claim that on a motion to dismiss a *Zadvydas* claim, the Court should not accept the petitioner's allegations as true and must consider the defendant's declarations and other evidence beyond the pleadings.  (*Id*. at 6.)  The Court declines to adopt Defendants' approach here.  The Supreme Court in *Zadvydas* established a burden-shifting framework by which Defendants have an opportunity to rebut Petitioners' showing.  Defendants fail to cite any binding authority that interprets *Zadvydas* as requiring this Court to eschew well-established pleading standards.  Given ICE's allegedly longstanding practice of not removing pre-1995 Vietnamese immigrants and the 2008 diplomatic agreement, Petitioners have stated a plausible claim for relief under Count One.

Defendants alternatively argue that Petitioners' claim under Count One is premature as to the putative 90-Day Class. (Mot. at 16–18.) Petitioners' proposed 90-Day Class consists of pre-1995 Vietnamese immigrants who have been detained for more than 90 days after receiving a final order of removal. Defendants argue that post-removal order noncitizens cannot bring a *Zadvydas* claim challenging their detention until they have been detained for the presumptively reasonable six-month period. Until then, Defendants argue, the 90-Day Class' claim is unripe.

The issue of whether noncitizens can challenge their detention under section 1231(a)(6) before the six-month period passes appears to be an open question in the Ninth Circuit. In *Zadvydas*, the Supreme Court held that section 1231(a)(6) "implicitly limits an alien's detention to a period reasonably necessary to bring about that alien's removal." *Id*. at 689. Recognizing the "difficult judgments" that would be left to the district court, the Supreme Court established a "presumptively reasonable period of detention" of six months. *Id*. at 701. Once an individual has been detained for six months, constitutional concerns presumptively arise, and the Supreme Court's burden-shifting framework serves as a "guide [for] lower court determinations." *Id*. at 700–701. The Supreme Court in *Zadvydas* did not explicitly preclude a noncitizen from challenging his detention prior to the end of the presumptively reasonable six-month period.

Defendants argue that the Ninth Circuit's holding in *Khotesouvan v. Morones* "squarely" indicates that a *Zadvydas* claim is unripe before the six-month period. (Mot. at 16.) In *Khotesouvan*, the Ninth Circuit considered *Zadvydas* claims by Vietnamese and Laotian noncitizens who had been in post-removal order detention. 386 F.3d 1298, 1301 (9th Cir. 2004). At issue was whether the Government could continue to detain post-removal order petitioners who had been in custody for less than 90 days, but whose removal the Government conceded was not reasonably foreseeable. *Id*. at 1299. The

Ninth Circuit held that the petitioners could not raise a due process claim challenging their detention under *Zadvydas* "until at least 90 days of detention have passed." *Id.*

Defendants have failed to show how *Zadvydas* or *Khotesouvan* close the door on Petitioners' claim as to the putative 90-Day Class. The six-month *Zadvydas* presumption is "just that—a presumption." *Clark v. Martinez*, 543 U.S. 371, 387 (2005) (O'Connor, J., concurring). The Supreme Court in *Zadvydas* outlined a "guide" for approaching these detention challenges, 533 U.S. at 700–701, not a prohibition on claims challenging detention less than six months. Further, the petitioners in *Khotesouvan* were being detained pursuant to a notably different provision of section 1231. In *Khotesouvan*, the petitioners were still within the statutory 90-day removal period under section 1231(a)(2), during which the Government "*shall* detain the alien." *See* 8 U.S.C. § 1231(a)(2) (emphasis added). The 90-Day Class proposed here consists of individuals detained for *more* than 90 days pursuant to section 1231(a)(6), under which the Supreme Court found the discretionary "may" language posed a risk of indefinite detention. *Zadvydas*, 533 U.S. at 697. In holding that a noncitizen could not challenge their detention "until at least 90 days of detention have passed," the Ninth Circuit in *Khotesouvan* left open the 90-Day Class Members' claim challenging detention greater than 90 days. Petitioners have stated a plausible claim for relief as to the 90-Day Class for the reasons already addressed in the discussion of Count One above.

### 2. Count Two: Individualized Bond Hearing

In Count Two, Petitioners claim that even if removal is reasonably foreseeable, detention for more than six months violates section 1231 and constitutional due process where it is "without any individualized determination that [the noncitizens] pose a danger or flight risk." (*Id.* ¶¶ 72–75.) Petitioners assert this claim on behalf of the members of the Prolonged Detention Class, *i.e.*, all pre-1995 Vietnamese immigrants who have been

or will be detained by ICE for more than 180 days without a bond hearing. Defendants move to dismiss Count Two for failure to state a claim on the grounds that it is not supported by statute and conflicts with Supreme Court authority. (Mot. at 18–23.)

Petitioners do not assert that the text of section 1231(a)(6) itself provides for individualized bond hearings. Rather, Petitioners assert that noncitizens facing prolonged detention under section 1231 are entitled to an individualized bond hearing based on Ninth Circuit authority in *Diouf v. Napolitano*. In that case, the Ninth Circuit held that prolonged detention under section 1231(a)(6) raises "serious constitutional concerns" where it occurs "without adequate procedural protections." 634 F.3d 1081, 1085–86 (9th Cir. 2011) (quotation marks omitted). The court concluded that a noncitizen facing prolonged detention under § 1231(a)(6) therefore "is entitled to a bond hearing before an immigration judge." *Id*. "[U]nless the government establishes that the alien poses a risk of flight or a danger to the community," the noncitizen is entitled to release from detention. *Id*.

Defendants dispute the reach of the Ninth Circuit's holding in *Diouf* and argue it has been "effectively overruled by" and is "clearly irreconcilable" with Supreme Court authority in *Jennings v. Rodriquez*. (Mot. at 20.) In *Jennings*, the Supreme Court held that three pre-removal order detention statutes not at issue in this litigation—8 U.S.C. §§ 1225(b), 1226(a), 1226(c)—cannot be construed to require bond hearings. 138 S. Ct. 830, 848–51 (2018). Defendants argue that in light of *Jennings*, the Ninth Circuit in *Diouf* "did not plausibly interpret the statutory text" of section 1231(a)(6). (Mot. at 20.) Defendants claim that because *Diouf* applied Ninth Circuit precedent that was overturned in *Jennings*, *Jennings* and *Diouf* are irreconcilable. (*Id*. at 21.)

The outcome in *Jennings* does not foreclose Petitioners' claim here. First, the Supreme Court in *Jennings* expressly stated that section 1231(a)(6) "differs materially"

from the three statutes at issue in that case. 138 S. Ct. at 833. Unlike the other detention statutes, section 1231(a)(6) could plausibly be read to contain an "implicit time limit" and employed discretionary language that justified application of the constitutional avoidance doctrine. *Id*. at 843–44 (citing *Zadvydas*, 533 U.S. at 683). Further, at least nine district courts in the Ninth Circuit have held that *Diouf* remains good law post-*Jennings*.[4] This Court can disregard *Diouf* only if it is "clearly irreconcilable" with *Jennings*—a "high standard." *See United States v. Robertson*, 875 F.3d 1281, 1291 (9th Cir. 2017). In light of the Supreme Court's express distinguishing of section 1231(a)(6) and the authority in this Circuit to the contrary, Defendants have failed to meet that high standard here.

Petitioners also assert that they are entitled to bond hearings under the Due Process Clause. (Opp. at 18.) Detention must be accompanied by "adequate procedural protections" to ensure that the Government's asserted interest "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 633 U.S. at 690. Defendants argue that under *Zadvydas*, post-removal order detention does not raise a due process violation until the petitioner shows he is not significantly likely to be removed in the reasonably foreseeable future. (Opp. at 18.) Defendants argue that because Petitioners have not made that showing here, their detention cannot raise a constitutional problem under *Zadvydas*. (*Id*.) However, as noted, Petitioners have alleged sufficient facts to state a claim that their removal is not reasonably foreseeable in the future. Petitioners have alleged sufficient facts to state a claim for individualized bond hearings under Count Two.

---

[4] *See Ramos v. Sessions*, 2018 WL 1317276, at *3 (N.D. Cal. Mar. 13, 2018); *Cortez v. Sessions*, 2018 WL 1510187, at *8 (N.D. Cal. Mar. 27, 2018); *Borjas-Calix v. Sessions*, 2018 WL 1428154, at *15 (D. Ariz. Mar. 22, 2018); *Banos v. Asher*, 2018 WL 1617706, at *1 (W.D. Wash. Apr. 4, 2018); *Higareda v. Sessions*, CV-18-00491-PHX-SPL (DKD) (D. Ariz. Apr. 5, 2018), Dkt. 20; *Sied v. Nielsen*, 2018 WL 1876907, at *5 (N.D. Cal. Apr. 19, 2018); *Mercado-Guillen v. Nielsen*, 2018 WL 1876916, at *3 (N.D. Cal. Apr. 19, 2018); *Hurtado-Romero v. Sessions*, 2018 WL 2234500, at *2 (N.D. Cal. May 16, 2018); *Gonzalez v. Sessions*, 2018 WL 2688569, at *11 (N.D. Cal. June 5, 2018). Several of these cases are on appeal to the Ninth Circuit.

## IV. CONCLUSION

For the foregoing reasons, Defendants' hybrid motion to dismiss and habeas return is **DENIED**.

DATED: September 6, 2018

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE