1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **HOANG TRINH, VU HA, LONG NGUYEN, NGOC HOANG, DAI DIEP, BAO DUONG, and SIEU NGUYEN, on behalf of themselves and those similarly situated,**<br><br>       **Petitioners,**<br><br>    **v.**<br><br>**THOMAS D. HOMAN, KIRSTJEN M. NIELSEN, JEFFERSON B. SESSIONS III, DAVID MARIN, SANDRA HUTCHENS, and JOHN DOE,**<br><br>       **Defendants.** | **Case No.: SACV 18-00316-CJC(GJSx)**<br><br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITIONERS' MOTION FOR CLASS CERTIFICATION** |

## I.  INTRODUCTION

This putative class action challenges the Government's practice of subjecting Vietnamese immigrants to post-removal order detention despite the remote possibility of their removal to Vietnam.  (Dkt. 27 [First Amended Habeas Corpus Petition and Class

Action Complaint, hereinafter "FAC"] ¶¶ 1–4.)  The named Petitioners assert that they, along with thousands of other Vietnamese refugees who immigrated to the United States before July 12, 1995 ("pre-1995 Vietnamese immigrants"), have been or will be subjected to this practice.

Petitioners bring two causes of action for habeas relief, declaratory relief, and injunctive relief.  (*Id*. ¶ 76.)  In Count One, Petitioners assert that their post-removal order detention violates federal immigration law, 8 U.S.C. § 1231, and constitutional due process where removal is not likely to occur in the foreseeable future.  (*Id*. ¶¶ 64–70.)  In Count Two, Petitioners assert that even where removal is reasonably foreseeable, their prolonged detention violates section 1231 and constitutional due process when it is "without any individualized determination that they pose a danger or flight risk."  (*Id*. ¶¶ 72–75.)

Petitioners now seek to certify three putative classes of pre-1995 Vietnamese immigrants who, like them, received removal orders, faced varying periods of immigration detention, and either remain detained or face redetention by the Government.  (Dkt. 65 [Mot. for Class Cert., hereinafter "Mot."].)  Petitioners' three putative classes consist of (1) all pre-1995 Vietnamese immigrants who have been or will be detained by ICE for more than 90 days after receiving removal orders ("90-Day Class"), (2) all pre-1995 Vietnamese immigrants who have been or will be detained by ICE for more than 180 days after receiving removal orders ("180-Day Class"), and (3) all pre-1995 Vietnamese immigrants who have been or will be detained by ICE for more than 180 days in total without a bond hearing ("Prolonged Detention Class").  (FAC ¶ 59.)  For the following reasons, Petitioners' motion for class certification is **GRANTED IN PART** and **DENIED IN PART**.

//

## II.  BACKGROUND

After the Vietnam War, the North Vietnamese government established the current Socialist Republic of Vietnam.  (Dkt. 22-12 [Declaration of Tu-Huong Nguyen-Vo, hereinafter "Nguyen-Vo Decl."] ¶ 7.)  Beginning in 1975, waves of Vietnamese refugees fled persecution and imprisonment by the new socialist regime.  (*Id.*)  Under various humanitarian programs, the United States accepted hundreds of thousands of these refugees, including Petitioners.  (*Id.* ¶ 13.)

Petitioners are Vietnamese citizens who immigrated to the United States prior to July 12, 1995.  (FAC ¶ 1.)  They became lawful permanent residents years ago but, based on criminal convictions, lost their green cards and were ordered removed.  (*Id.* ¶ 2.)  After facing varying periods of post-removal order detention, they have been released under orders of supervision that require them to regularly report to U.S. Immigration and Customs Enforcement ("ICE") offices.  *See* 8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.5(a).  Many have gone on to live productive lives, supporting and caring for dependent family members who are U.S. citizens.  (*See e.g.*, Dkt. 22-13 [Declaration of Ngoc Hoang, hereinafter "N. Hoang Decl."] ¶¶ 8, 15, 18; Dkt. 22-7 [Declaration of Long Nguyen, hereinafter "L. Nguyen Decl."] ¶ 3; Dkt. 65-3 [Declaration of Dai Diep, hereinafter "Diep Decl."] ¶ 16.)

Petitioners allege that until recently, the Government had a longstanding practice of detaining pre-1995 Vietnamese immigrants subject to removal orders for no longer than 90 days.  (FAC ¶ 3.)  This practice was purportedly implemented pursuant to a 2008 diplomatic agreement ("Agreement") between the United States and Vietnam that provides that "Vietnamese citizens are not subject to return to Vietnam under this Agreement if they arrived in the United States before July 12, 1995."  (*Id.* ¶¶ 2, 36; *id.*

Ex. A, Art. 2, ¶ 2.)[1]  Under Supreme Court authority in *Zadvydas v. Davis*, post-removal order detention triggers constitutional due process concerns where the immigrant's removal is not significantly likely in the reasonably foreseeable future.  533 U.S. 678, 701 (2001).  Petitioners allege that because the Agreement rendered pre-1995 Vietnamese immigrants' removal unlikely, the Government did not detain these individuals long enough to implicate the protections in *Zadvydas*.

In 2017, however, the Government departed from this longstanding practice and began subjecting pre-1995 Vietnamese immigrants to periods of detention exceeding 90 days.  (FAC ¶ 4.)  The Government initially contended that this shift in practices was the result of a mid-2017 "understanding" with Vietnamese government officials.  (Dkt. 56 [Defs.' Mot. to Dismiss Pets.' FAC] at 14.)  Under that understanding, Vietnam had begun to consider requests for travel documents for pre-1995 Vietnamese immigrants, despite the 2008 Agreement.  (Dkt. 56-1 [Second Declaration of Michael Bernacke, hereinafter "Bernacke Decl. II."] ¶ 2.)  Accordingly, the Government claimed that Petitioners could not show that their removal to Vietnam was not significantly likely in the reasonably foreseeable future.

Now, months later, the Government reverses its position.  The Government contends that it has reached another new understanding with Vietnamese government officials under which the removal of pre-1995 Vietnamese is *not* reasonably foreseeable, consistent with Petitioners' contention from the outset.  (Dkt. 67 [Govt.'s Opp. to Pets.' Mot. for Class Cert., hereinafter "Opp."].)  This second understanding purportedly occurred the week of August 6—a month before the Court's Order denying the Government's motion to dismiss.  (Opp. at 1; *see* Dkt. 66.)  However, the Government

---

[1] The Agreement states it will be valid for five years and extended automatically for successive three-year terms thereafter, unless written notice not to extend is given by either country.  (FAC Ex. A, Art. 6.)  The Petitioners allege and the Government does not contest that the Agreement has not been terminated or modified by either country.  (FAC ¶ 35.)

did not disclose this information until September 17, in its opposition to the instant motion.  Under this second understanding, the Government "no longer believes that Vietnamese nationals who immigrated to the United States before July 12, 1995 . . . are significantly likely to be removed to Vietnam in the reasonably foreseeable future."  (*Id*.) Because removal to Vietnam is not reasonably foreseeable, the Government claims that it has begun releasing all pre-1995 Vietnamese immigrants on orders of supervision.  (*Id*.; Dkt. 67-1 [Fourth Declaration of Michael Bernacke, hereinafter "Bernacke Decl. IV"] ¶ 2.)

Setting aside the dynamic state of United States-Vietnam immigration relations, the Government's data shows that Vietnam has consistently refused travel document requests for pre-1995 Vietnamese immigrants.  From February 22, 2018 to July 28, 2018, ICE detained at least 105 pre-1995 Vietnamese immigrants for more than 90 days post-removal order, 64 for more than 180 days post-removal order, and 116 for more than 180 days in total.  (Dkt. 65-4 [Declaration of Jingni Zhao, hereinafter "Zhao Decl."] ¶ 5; *id*. Ex. A.)  As of July 28, 2018, at least 55 pre-1995 Vietnamese immigrants were still in custody.  30 of those immigrants had been detained for more than 90 days post-removal order and 12 had been detained for more than 180 days post-removal order.  (*Id*. ¶ 4; *id*. Ex. A.)  The Government submitted 86 travel document requests to Vietnam for these individuals.  All but one have been denied or remain unanswered.  (*Id*. ¶ 7; *id*. Ex. B.) The one pre-1995 Vietnamese immigrant who received a travel document received the document approximately three months ago, yet is still in detention.  (*Id*. Ex. C.)  At the hearing on October 15, 2018, the Government disclosed that 28 pre-1995 Vietnamese immigrants are currently in detention, 4 of whom have been detained for more than 90 days post-removal order.  Although many Petitioners have been released from custody, the Government has explicitly reserved the right to redetain them.  (Bernacke Decl. IV ¶ 3.)

## III. ANALYSIS

Under Federal Rule of Civil Procedure 23, district courts have broad discretion to determine whether a class should be certified. *Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001). Rule 23 is not merely a pleading standard—a party seeking class certification must affirmatively demonstrate compliance with the Rule by proving the requirements in fact. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23(a) provides that a case is appropriate for certification as a class action if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." These four requirements are often referred to as numerosity, commonality, typicality, and adequacy. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982).

Rule 23(b) defines different types of classes. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2012). In this case, Petitioners seek certification pursuant to Rule 23(b)(2). (Mot. at 2.) Rule 23(b)(2) permits certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Petitioners bear the burden of satisfying the elements of Rules 23(a) and 23(b)(2) for each of their three proposed classes. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

//

## A. Rule 23(a)

Under Rule 23(a), Petitioners must meet the four requirements of commonality, typicality, numerosity, and adequacy.  The Court considers each requirement in turn.

### 1.    Commonality

Under Rule 23(a)(2)'s commonality requirement, there must be "questions of law or fact common to the class."  Petitioners must "demonstrate that the class members 'have suffered the same injury,'" not "merely that they have all suffered a violation of the same provision of law."  *Wal-Mart Stores*, 564 U.S. at 350 (quoting *Gen. Tel. Co.*, 457 U.S. at 157).  Petitioners' claim must depend on a "common contention" that is "capable of classwide resolution."  *Id*.  This means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*

Petitioners move to certify their putative 90-Day and 180-Day Classes as to Count One.  In Count One, Petitioners assert that their post-removal order detention violates federal immigration law, 8 U.S.C. § 1231(a)(6), and constitutional due process where their removal is not significantly likely to occur in the reasonably foreseeable future. (FAC ¶¶ 64–70.)  Section 1231 provides that after an alien is ordered removed, the Government "shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A).  During the 90-day removal period, the Government "shall detain the alien."  *Id*. § 1231(a)(2).  Once the 90-day removal period ends, the Government may continue to detain certain noncitizens, such as Petitioners, whose criminal convictions render them removable.  *Id.* § 1231(a)(6).  Section 1231(a)(6) does not, however, authorize the Government to detain a noncitizen indefinitely.  *Zadvydas*, 533 U.S. at 688–702.  Rather, the statute, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring

about the alien's removal." *Id*. at 689.  Recognizing the "difficult judgments" that would be left to a district court, the Supreme Court held that six months is a "presumptively" reasonable period of detention.  *Id*. at 701.  If after six months, the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government "must respond with evidence sufficient to rebut that showing."  *Id*.  If the Government fails to do so, it cannot subject the noncitizen to continued detention.  *See id*.

Petitioners' 90-Day and 180-Day Class claims present common questions that will "resolve an issue that is central to the validity of each one of the claims in one stroke." *See Walmart Stores*, 564 U.S. at 350.  The resolution of Petitioners' claim as to the 90-Day Class presents at least one common question: whether the class members may bring a *Zadvydas* claim *after* the 90-day removal period but *before* the presumptively reasonable six-month period.  (Mot. at 16.)  Petitioners seek a uniform declaration that the 90-Day Class has overcome *Zadvydas*' "six-month presumption of reasonableness," shifting the burden to the Government to show that the putative members' removal is reasonably foreseeable.  (*Id*. at 24; Dkt. 71 [Pets.' Reply, hereinafter "Reply"] at 10.)  As this Court stated in denying the Government's motion to dismiss, whether a noncitizen can challenge post-removal order detention under *Zadvydas* prior to the six-month period appears to be an open question in the Ninth Circuit.  (Dkt. 66 at 14.)  Answering that question, among others, will determine whether Petitioners' claim as to the putative 90-Day Class can proceed.

Petitioners' claim as to the 180-Day Class likewise presents at least one common question: whether the 2008 Agreement and "Vietnam's historical practice" of refusing repatriation of pre-1995 Vietnamese immigrants allows Petitioners to satisfy their initial burden under *Zadvydas*.  (Mot. at 14–15.)  If this question is answered in the affirmative, the burden under *Zadvydas* would shift to the Government to provide evidence that the

putative class members' removal is reasonably foreseeable. *See Zadvydas*, 533 U.S. at 701. The fact that the Government now concedes that Vietnam will not accept pre-1995 Vietnamese immigrants does not render this question moot. Many of the pre-1995 Vietnamese immigrants remain in detention, and those already released can be redetained at any time. Indeed, the Government has explicitly reserved its right to redetain these individuals. (*See* Bernacke Decl. IV ¶ 3.)

Petitioners move to certify their putative Prolonged Detention Class as to Count Two. In Count Two, Petitioners claim that even if their removal is reasonably foreseeable, detention for more than six months violates section 1231 and constitutional due process where it is "without any individualized determination that [the noncitizens] pose a danger or flight risk." (FAC ¶¶ 72–75.) Petitioners' Prolonged Detention Class includes individuals who have been or will be detained for more than 180 days in total, "including days in detention both before and after a final removal order." (Mot. at 8, 10.) Accordingly, if a pre-1995 Vietnamese immigrant was detained for 180 days under 8 U.S.C. § 1226 (pre-removal order detention statute) and only one day under 8 U.S.C. § 1231 (post-removal order detention statute), the individual would fall into the proposed class.

Petitioners assert that noncitizens facing prolonged detention under section 1231 are entitled to an individualized bond hearing based on Ninth Circuit authority in *Diouf v. Napolitano*. In that case, the court held that prolonged detention under section 1231(a)(6) raises "serious constitutional concerns" where it occurs "without adequate procedural protections." 634 F.3d 1081, 1085–86 (9th Cir. 2011) (quotation marks omitted). The court concluded that a noncitizen facing prolonged detention under section 1231(a)(6) therefore "is entitled to a bond hearing before an immigration judge." *Id.* "[U]nless the government establishes that the alien poses a risk of flight or a danger to the community," the noncitizen is entitled to release from detention. *Id.* In its motion to dismiss

Petitioners' FAC, the Government contended that *Diouf* was "effectively overruled by" *Jennings v. Rodriguez.* (Dkt. 56 at 20.) In *Jennings*, the Supreme Court held that three *pre*-removal order detention statutes cannot be construed to require bond hearings. 138 S. Ct. 830, 848–51 (2018). In light of *Jennings*, the Government argued, the Ninth Circuit in *Diouf* did not "plausibly interpret the statutory text" of section 1231. (Dkt. 56 at 20.)

The Government claims that the differences between pre-removal order and post-removal order detention statutes "preclude" a finding that common answers can drive the resolution of the Prolonged Detention Class's claim. (Opp. at 14.) The Court disagrees. The Government's argument goes to the merits of Petitioners' claim under Count Two, not to class certification. Regardless of which party is correct, whether Petitioners' putative Prolonged Detention Class is entitled to a bond hearing presents a "common contention" that is "capable of classwide resolution." *Wal-Mart Stores*, 564 U.S. at 350. Because common answers will drive the resolution of Petitioners' class claims, Petitioners' three proposed classes satisfy the commonality requirement under Rule 23(a).

### 2. Typicality

Under Rule 23(a)(3), the named Petitioners' claims or defenses must be "typical of the claims or defenses of the class." "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named Petitioners, and whether other class members have been injured by the same course of conduct.'" *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992)). Typicality aims to ensure that "the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508. "Under the rule's permissive standards,

representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998).

The named Petitioners face a similar injury based on the same course of conduct—the Government's detention policies regarding pre-1995 Vietnamese immigrants. Petitioner Hoang Trinh ("Trinh") seeks to represent the 180-Day Class and Prolonged Detention Class.  (Mot. at 17.)  Trinh entered the United States with his family as a four-year-old refugee in 1980.  (FAC ¶ 11; Dkt. 22-9 [Declaration of Hoang Trinh, hereinafter "Trinh Decl."] ¶¶ 2–3.)  He worked in his family's bakery while growing up and now runs a Vietnamese sandwich shop with his wife.  (FAC ¶ 11; s*ee* Trinh Decl. ¶ 8; Mot. at 17.)  Trinh's wife, two children, parents, and six sisters are all U.S. citizens.  (FAC ¶ 11.) He was ordered removed following incarceration for alleged possession of a marijuana plant.  (*Id.*)  Trinh was detained for more than 180 days following entry of a removal order without a bond hearing.  (Trinh Decl. ¶¶ 9, 11, 14; Dkt. 24-1 [Declaration of Michael Bernacke, hereinafter "Bernacke Decl. I"] ¶ 2.)

Petitioner Vu Ha ("Ha") seeks to represent the 90-Day Class and the Prolonged Detention Class.  (Mot. at 18.)  Ha escaped Vietnam at the age of nine and entered the United States as a ten-year-old refugee in 1990.  (FAC ¶ 12; Dkt. 22-16 [Declaration of Vu Ha, hereinafter "Ha Decl."] ¶ 3.)  His parents, sister, and daughter are U.S. citizens. (FAC ¶ 12; Ha Decl. ¶ 4.)  He was arrested three times as a young adult between 2000 and 2005, once being for robbery.  (FAC ¶ 12.)  In 2017, he was arrested and detained for failure to pay a citation for driving without a license.  (*Id.*)  He was transported from county jail to ICE custody in May 2017 and was ordered removed on September 19, 2017.  (*Id.*)  He was detained for more than 90 days following entry of his removal order and for more than 180 days in total without a bond hearing.  (Ha Decl. ¶¶ 12, 18; Bernacke Decl. I ¶ 2.)

Petitioner Long Nguyen ("Nguyen") seeks to represent the 90-Day Class.  (Mot. at 18.)  Nguyen entered the United States as an eleven-year-old refugee in 1987.  (FAC ¶ 13.)  His wife, three step-daughters, and two-year-old daughter are all U.S. citizens.  (L. Nguyen Decl. ¶ 9.)  He and his wife work at a nail salon that his wife manages.  (FAC ¶ 13.)  In 2006, he was convicted of a nonviolent felony drug offense.  (*Id.*)  In 2010 or 2011, he was detained after traveling abroad and ordered removed on April 18, 2012.  (*Id.*)  He was detained for more than 90 days after entry of his removal order.  (L. Nguyen Decl. ¶¶ 12, 16; Bernacke Decl. I ¶ 2.)

Petitioner Ngoc Hoang ("Hoang") seeks to represent the 90-Day Class.  (Mot. at 18.)  Hoang entered the United States at age sixteen in 1990, after his father was jailed in a reeducation camp for having served in the South Vietnamese military.  (FAC ¶ 14; N. Hoang Decl. ¶¶ 3, 5.)  Hoang was married to a U.S. citizen with whom he has four children, all under the age of eighteen.  (FAC ¶ 14.)  Hoang now works as a nail salon technician.  (*Id.*)  In 1994, he pled guilty to check fraud and in 2010, he was placed on probation for simple assault and simple battery.  (*Id.*)  He was ordered removed on December 12, 2012 and released on an order of supervision approximately two months later.  (*Id.*)  Over the next five years, Hoang complied with the requirements of that order.  (*Id.*)  But on November 6, 2017, he was unexpectedly re-arrested by ICE officers at his home.  (*Id.*)  Hoang was detained for more than 90 days after entry of his final removal order.  (N. Hoang Decl. ¶¶ 12, 16; Bernacke Decl. I ¶ 2.)

Petitioner Sieu Nguyen ("Sieu") seeks to represent the 90-Day Class and the Prolonged Detention Class.  (Mot. at 18–19.)  Sieu entered the United States at age three in 1989.  (FAC ¶ 15; Dkt. 65-2 [Declaration of Sieu Nguyen, hereinafter Sieu Decl.] ¶ 2.)  His parents and seven siblings are all U.S. citizens.  (Sieu Decl. ¶ 3.)  Sieu was convicted of robbery in 2007 and burglary and receipt of stolen property in 2010.  (*Id.*)  He was

ordered removed on December 19, 2017, and detained for more than 180 days without a bond hearing.  (*Id.* ¶¶ 7, 10; Bernacke Decl. II ¶ 7.)

Petitioner Dai Dep ("Diep") seeks to represent the 180-Day Class and Prolonged Detention Class.  (Mot. at 19.)  Diep entered the United States as a refugee in 1995.  (Diep Decl. ¶ 2.)  His mother, stepfather, and half-siblings are all U.S. citizens, as is his biological father, who worked for the U.S. Department of Defense during the Vietnam War.  (*Id.* ¶ 9.)  In November 2015, he pled guilty to second-degree robbery, second-degree burglary, and vandalism, for which he was sentenced to two years of imprisonment.  (FAC ¶ 17.)  He was ordered removed on October 26, 2017, (*id.*), and was detained for more than 180 days without a bond hearing, (Diep Decl. ¶¶ 13, 15; Bernacke Decl. II ¶ 7).

The Government disputes Petitioners' ability to satisfy the typicality requirement, but it offers no arguments on the issue.  (*See* Opp. at 6.)  Here, the named Petitioners were subjected to post-removal order detention for varying periods of time, despite the remote possibility of their removal to Vietnam.  They now seek uniform relief from further detention.  The named Petitioners' interests thus "align[] with the interests of the class."  *See Hanon*, 976 F.2d at 508.  Petitioners have satisfied their burden of showing typicality under 23(a)(3).

### 3.  Numerosity & Adequacy

The Government's moving papers do not contest that Petitioners' three putative classes are sufficiently numerous and that the named Petitioners will serve as adequate representatives.[2]  In any event, Petitioners satisfy both requirements here.

---

[2] *See* Opp. at 6 n.2 ["Respondents acknowledge that several thousand pre-1995 aliens live in the United States.  Respondents thus concede that the proposed classes satisfy the numerosity

Under Rule 23(a)(1), Petitioners must show that the "class is so numerous that joinder of all members is impracticable." According to the Government, in the five months after this action was filed, ICE detained at least 105 pre-1995 Vietnamese immigrants for more than 90 days post-removal order, 64 for more than 180 days post-removal order, and 116 for more than 180 days in total. (Zhao Decl. ¶ 5, Ex. A.) While the size of Petitioners' putative classes fluctuates, the numbers identified reflect a large pool of individuals who have been or will be impacted by the Government's detention practices. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1202–03 (N.D. Cal. 2017) (finding numerosity satisfied based on 15 identified class members and the likelihood of future members). Further, other factors make joinder of the putative class members impracticable. These individuals are geographically dispersed and face restricted access to legal resources and high poverty rates. Petitioners have met their burden of showing that the putative classes are sufficiently numerous under Rule 23(a)(1).[3]

Petitioners have also shown that the named Petitioners "will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation requires that the named Petitioners (1) have no interests antagonistic to the interests of the class and (2) are represented by counsel that is capable of vigorously prosecuting their interests. *In re Cathode Ray Tube (CRT) Antitrust Litig*., 308 F.R.D. 606, 618 (N.D. Cal.

---

requirement. Respondents also do not contest that, if the Court certified a class, Petitioners' attorneys would fairly and adequately represent the class's interests."].

[3] The Government argued for the first time at the hearing on October 15, 2018 that Petitioners could not satisfy the numerosity requirement. According to the Government's new data, only 28 pre-1995 Vietnamese immigrants are currently in detention, 4 of whom have been detained beyond the mandatory 90-day removal period. Because the Government is releasing pre-1995 Vietnamese immigrants, it argues, Petitioners' proposed classes are no longer sufficiently numerous. This argument, however, ignores the parameters of Petitioners' proposed classes. Petitioners seek to certify classes of individuals who have been *or will be* detained by ICE for more than 90 days where removal is not reasonably foreseeable. Petitioners' classes, by their nature, are subject to fluctuation and potentially include individuals not currently in detention. Although the Government has suddenly decided to release pre-1995 Vietnamese immigrants, it continues to explicitly reserve its right to redetain Petitioners.

2015).  Here, Petitioners satisfy both requirements.  There are no conflicts between the interests of the named Petitioners and those of the putative class members.  Named Petitioners share with the putative class members an interest in minimizing detention and protecting their due process rights.  The named Petitioners have also retained counsel who are well qualified in immigrant rights and class-action litigation.  (*See* Dkts. 22-2 [Declaration of Raymond Cardozo], 22-10 [Declaration of Phi Nguyen], 22-11 [Declaration of Jingni Zhao].)  There is no indication that Petitioners' counsel will not continue to vigorously protect Petitioners' interests.  Petitioners' three putative classes satisfy the four requirements under Rule 23(a).

## B. Rule 23(b)(2)

Petitioners seek certification pursuant to Rule 23(b)(2).  Under Rule 23(b)(2), Petitioners must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Rule 23(b)(2) "applies only when a single injunction or declaratory judgment would provide relief to each member of the class."  *Wal-Mart Stores*, 564 U.S. at 360.  "The rule does not require [the Court] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010).  The Court considers each putative class in turn.

The putative 90-Day Class members have faced uniform conduct capable of uniform relief.  First, they have been subjected to the same allegedly unlawful conduct: post-removal order detention for more than 90 days where removal to Vietnam is not significantly likely in the reasonably foreseeable future.  Further, they seek a uniform remedy.  Petitioners seek declaratory relief stating that (1) the Class can challenge its

detention under *Zadvydas* before the presumptively reasonable six-month period, and (2) that the Class has shown its removal is not significantly likely in the foreseeable future, shifting the burden to the Government to demonstrate that removal is reasonably foreseeable.  (Mot. at 23–24.)

The Government does not dispute that Petitioners' proposed declaratory relief would provide relief to each member of the putative 90-Day Class.  Rather, they contend that if this Court granted that relief, it would contradict the holding in *Zadvydas*. *Zadvydas*, the Government argues, "requires *an alien* to make an initial showing, based on *current facts* and circumstances, of 'good reason to believe' that his removal is not reasonably foreseeable."  (Opp. at 13 [emphasis in original].)  By issuing a classwide declaration regarding the foreseeability of pre-1995 immigrants' removal under *Zadvydas*, the Government contends that the Court would issue an improper "classwide, *per se* predetermination that pre-1995 [Vietnamese immigrants] cannot be removed." (*Id*. at 10.)

The Government mischaracterizes Petitioners' proposed declaratory relief. Petitioners do not seek a "*per se* predetermination" that all pre-1995 Vietnamese immigrants cannot be removed.  Petitioners seek an order declaring that the removal of pre-1995 Vietnamese immigrants is not reasonably foreseeable based on the facts currently before the Court.  If the Court declares that the current circumstances indicate "good reason to believe" that pre-1995 Vietnamese immigrants' removal is not significantly likely in the reasonably foreseeable future, the Government would have the opportunity to rebut that showing under *Zadvydas*.  In any event, the Government fails to identify any individualized criteria that would definitively make removal more or less foreseeable for a pre-1995 Vietnamese immigrant.  To date, they have addressed the putative class members' likelihood of removal on a groupwide basis.  Initially they argued that classwide relief was inappropriate because pre-1995 Vietnamese immigrants

*could* be removed under a new verbal understanding with Vietnam.  Now they claim classwide relief is inappropriate because pre-1995 Vietnamese immigrants definitively *cannot* be removed under another new understanding.  Whether or not Petitioners will ultimately prevail on the merits, the adjudication of their request would provide or deny "uniform relief from a practice applicable to all of" the putative 90-Day Class members. *See Rodriguez*, 591 F.3d at 1125.  The Court grants certification of the 90-Day Class as to the isolated issues of whether the Class has overcome the six-month presumption of reasonableness and met its burden under *Zadvydas*.  *See* Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues.")

On behalf of the 180-Day Class, Petitioners seek injunctive relief, or in the alternative, declaratory relief.  Petitioners' proposed injunctive relief enjoins the Government from detaining pre-1995 Vietnamese immigrants for more than 180 days "absent proof that Vietnam has agreed to repatriate" them.  (Mot. at 8, 21; Reply at 4, 7.) In the alternative, Petitioners ask this Court to declare that the 180-Day Class members, like the 90-Day Class members, have met their initial burden under *Zadvydas* by showing that their removal is not significantly likely in the reasonably foreseeable future.  (Mot. at 23.)

Petitioners' proposed injunctive relief contradicts *Zadvydas* and intrudes on legislative and executive branch authority.  Under *Zadvydas*, Petitioners can challenge their detention where they show their removal is not significantly likely in the reasonably foreseeable future.  Petitioners' injunctive relief, however, asks this Court to prevent the Government from detaining pre-1995 Vietnamese immigrants unless the Government makes an evidentiary showing that Vietnam has agreed to repatriate them.  The Supreme Court in *Zadvydas* did not imbue the courts with such expansive authority to interfere with the Government's ability to effectuate federal immigration law.  Indeed, the

Supreme Court explicitly counseled against such an intrusion. *See Zadvydas*, 533 U.S. at 659 (recognizing that the "Judicial Branch must defer to Executive and Legislative Branch decisionmaking" in immigration law); *id*. at 700 (stating that a court's review in these cases "must take appropriate account of the greater immigration-related expertise of the Executive Branch"). The Supreme Court was careful to acknowledge that the courts have no authority to "deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions." *Id*. at 659. The Supreme Court simply addressed the issue of "whether aliens that the Government finds itself unable to remove are to be condemned to an indefinite term of imprisonment within the United States." *Id*. Under *Zadvydas*, Petitioners may challenge that "indefinite . . . imprisonment" *once it occurs*.

In the alternative, Petitioners seek declaratory relief that mirrors the relief sought on behalf of the 90-Day Class. Specifically, they ask this Court to declare that the 180-Day Class members have met their burden under *Zadvydas* to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. Unlike Petitioners' proposed injunctive relief, this declaratory relief can be issued on a classwide basis without categorically preventing the Government from redetaining pre-1995 Vietnamese immigrants.[4] At 180 days of post-removal order detention, the Government could continue detaining a pre-1995 Vietnamese immigrant if Vietnam issued a travel document or otherwise agreed to repatriation. Petitioners have met their burden of showing that the putative 180-Day Class members have faced uniform conduct addressable by uniform declaratory relief under Rule 23(b)(2).

---

[4] The Government contends that Supreme Court authority in *Jama v. ICE* counsels against imposing "improper restriction[s] on the Government's authority to remove post-order aliens." (Opp. at 10 [citing *Jama v. ICE*, 543 U.S. 335, 344 (2005)].) However, that case was not about the Government's detention authority. The issue was whether ICE was authorized to remove noncitizens to Somalia, which lacked a functioning government to provide advance consent. Here, Petitioners' proposed relief does not interfere with noncitizens' removal. It concerns prolonged *detention* where their removal is unlikely.

The Government contends that declaratory relief, without injunctive relief, is meaningless.  At the hearing, counsel for the Government argued that because any declaratory relief stating that the class members' removal is not reasonably foreseeable under *Zadvydas* would be limited to the facts and circumstances currently before the Court, that relief would not have any weight if the circumstances affecting their removal change.  Although declaratory relief on behalf of the 90-Day and 180-Day Classes would be limited in its reach, it is not without teeth.  Declaratory relief stating that the class members have met their initial burden under *Zadvydas* would allow them to challenge more easily on an individual or perhaps collective basis the constitutionality of further detention when Vietnam continues to refuse their repatriation.  The Court recognizes that it cannot interfere with the Government's authority to detain individuals pursuant to federal immigration law, but it can and must intervene where detention deprives individuals of their constitutional rights.  Although the Government now has conceded that class members' removal to Vietnam is not likely in the reasonably foreseeable future, the Government has not conceded that it violated these individuals' constitutional rights when it detained them with the knowledge that they could not and would not be removed to Vietnam.  And more importantly, many of the class members still remain in detention, and the Government has explicitly reserved its right to redetain all of those it has recently released.  Contrary to the Government's assertion, the proposed declaratory relief is not meaningless.

Finally, Petitioners have also shown that the putative Prolonged Detention Class members have faced uniform conduct capable of uniform relief.  On behalf of the Prolonged Detention Class, Petitioners seek individualized bond hearings for pre-1995 Vietnamese immigrants who have been or will be detained for more than 180 days in total.  The putative class members have been subjected to a uniform practice: detention for more than 180 days in total without a bond hearing.  The requested relief—bond hearings—would "provide relief to each member of the class."  *See Wal-Mart Stores*, 564

U.S. at 360.  Courts in this Circuit have routinely employed Rule 23(b)(2) to certify claims involving the Government's blanket refusal to conduct bond hearings.  *See, e.g., Preap v. Johnson*, 303 F.R.D. 566, 571 (N.D. Cal. 2014) (holding that "the class action mechanism easily and efficiently establishes the right of all class members to a bond hearing"); *Riviera v. Holder*, 307 F.R.D. 539, 551 (W.D. Wash. 2015); *Hernandez v. Lynch*, 2016 WL 7116611, at *19 (C.D. Cal. Nov. 10, 2016), *aff'd sub nom. Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017).  Whether Petitioners' 180-Day Class is entitled to individualized bond hearings here is a question for the merits.  Petitioners have satisfied their burden of showing that the putative Prolonged Detention Class is appropriate for certification under Rule 23(b)(2).

## IV.  CONCLUSION

For the foregoing reasons, Petitioners' motion for class certification is **GRANTED IN PART** and **DENIED IN PART**.  The Court hereby designates Petitioners' counsel as class counsel and appoints the named Petitioners as class representatives.

DATED:     October 18, 2018

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE