**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **HOANG TRINH, VU HA, LONG NGUYEN, NGOC HOANG, DAI DIEP, BAO DUONG, and SIEU NGUYEN, on behalf of themselves and those similarly situated,**<br><br>          **Petitioners,**<br><br>    **v.**<br><br>**THOMAS D. HOMAN, KIRSTJEN M. NIELSEN, JEFFERSON B. SESSIONS III, DAVID MARIN, SANDRA HUTCHENS, and JOHN DOE,**<br><br>        **Respondents.** | **Case No.: SACV 18-00316-CJC(GJSx)**<br><br><br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT [Dkts. 119, 124]** |

## I.  INTRODUCTION

This class action challenges the government's practice of subjecting Vietnamese immigrants to detention despite the remote possibility of their removal to Vietnam.  (Dkt. 27 [First Amended Habeas Corpus Petition and Class Action Complaint, hereinafter

"FAC"] ¶¶ 1–4.)  The named Petitioners assert that they, along with hundreds of other Vietnamese citizens who immigrated to the United States before July 12, 1995 ("pre-1995 Vietnamese immigrants"), were subjected to this practice.

Now before the Court are cross motions for summary judgment on one of the two counts asserted in the FAC.  (*See* Dkt. 119-1 [Petitioners' Memorandum in Support of Motion for Summary Judgment, hereinafter "Mot."]; Dkt. 124 [Respondents' Cross-Motion and Opposition, hereinafter "Cross Mot."].)  For the following reasons, Petitioners' motion is **DENIED IN SUBSTANTIAL PART,** and Respondents' cross-motion is **GRANTED IN SUBSTANTIAL PART**.[1]

## II.  BACKGROUND

### A.    Legal Background

Federal immigration law provides that after a removal order becomes final, the government "shall remove the alien from the United States within a period of 90 days."  8 U.S.C § 1231(a)(1)(A).  This ninety-day period is often referred to as the "initial removal period" and during it, the government "shall detain the alien."  *Id*. § 1231(a)(2).  In some circumstances, federal immigration authorities can continue to detain an alien beyond the initial removal period.  Specifically, section 1231(a)(6) allows the government to detain certain enumerated classes of aliens—including those were ordered removal due to criminal convictions—for more than ninety days.  *Id.* § 1231(a)(6).  In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Court addressed the question of how long the government can detain an alien pursuant to section 1231(a)(6).

---

[1] The Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for June 15, 2020, at 1:30 p.m. is hereby vacated and off calendar.

The *Zadvydas* Court began by rejecting the government's position that section 1231(a)(6) permitted indefinite detention following the initial removal period. *See id.* It held that "[a] statute that permitted indefinite detention of an alien would raise a serious constitutional problem," and instead determined that section 1231(a)(6) "implicitly limits an alien's detention to a period reasonably necessary to bring about that alien's removal." *Id.* at 679. Thus, "once removal is no longer foreseeable, continued detention is no longer authorized by [section 1231(a)(6)]." *Id.* at 699.

The Court went on to institute a framework that would govern future challenges to section 1231(a)(6) detention. "[F]or the sake of uniform administration in the federal courts," the Court found that post-removal detention was "presumptively reasonable" for the first six months. *Id.* at 700–01. When that "presumptively reasonable" six-month period ends, aliens seeking release from custody bear the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701; *see Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (explaining that "at six months, the burden is on the detainee—not the government—to establish a basis for release"). Once that initial showing is made, the burden shifts to the Government to respond with evidence sufficient to rebut it. *See Zadvydas*, 533 U.S. at 701.

## B.    The History of U.S.-Vietnam Repatriation Relations

After the Vietnam War, the North Vietnamese government established the current Socialist Republic of Vietnam ("Vietnam"). (Dkt. 22-12 [Declaration of Tu-Huong Nguyen-Vo, hereinafter "Nguyen-Vo Decl."] ¶ 7.) Around that time, waves of people from the former Republic of Vietnam (South Vietnam) fled the country to escape

political persecution.  (*Id.*)  Under various humanitarian programs, the United States accepted hundreds of thousands of Vietnamese refugees, including Petitioners.  (*Id.* ¶ 13.)

Between the end of the Vietnam War and 2008, Vietnam refused to repatriate any Vietnamese immigrants who had been ordered removed from the United States. (Dkt. 124-2 [Respondents' Statement of Genuine Disputes, hereinafter "Resp. Statement"] ¶ 2.)  Before a Vietnamese immigrant without a passport or other travel document[2] can be repatriated, Vietnam must issue a passport or other travel document in response to a request from ICE.  (*Id.* ¶ 1.)  In 2008, the United States and Vietnam reached a diplomatic agreement pursuant to which Vietnam agreed to start considering repatriation requests for certain Vietnamese immigrants.  (*Id.* ¶ 3.)  Specifically, the agreement obligated Vietnam to consider repatriation requests for Vietnamese immigrants who had arrived in the United States after July 12, 1995.  (Dkt. 27-1 [2008 Agreement] at Art. II, ¶ 1.)  The agreement also provided that "Vietnamese citizens are not subject to return to Vietnam under this agreement if they arrived in the United States before July 12, 1995."  (*Id.* at Art. II, ¶ 2.)  Relying on this provision, Vietnam maintained its policy of non-repatriation for pre-1995 Vietnamese immigrants after signing the 2008 agreement.  (Resp. Statement ¶ 5; Dkt. 124-3 [Declaration of Julian Kurz, hereinafter "Kurz Decl."] at Ex. B [Deposition of John Schultz, hereinafter "Schultz Dep."] at 62:6-11.)

### C.    Post-Removal Detention Practices for Pre-1995 Vietnamese Immigrants

Prior to 2017, U.S. Immigration and Customs Enforcement ("ICE") maintained that the removal of pre-1995 Vietnamese immigrants was unlikely given Vietnam's

---

[2] In this Order, the Court's analysis only concerns pre-1995 Vietnamese immigrants who do *not* already have a passport or other travel document.  For the sake of clarity, it will not repeat the "without a passport or travel document" qualification.

consistent refusal to repatriate them.  (FAC ¶ 3.)  Accordingly, ICE adopted a policy of detaining pre-1995 Vietnamese immigrants for no longer than ninety days after their removal orders became final.  (*Id.*)  After ninety days, ICE generally released them into the community on orders of supervision.  (*Id.*)

In 2017, ICE entered into negotiations with Vietnam that were aimed at amending the 2008 Agreement and developing a new policy that would allow for pre-1995 Vietnamese immigrants to be repatriated.  (Kurz Decl. at Ex. A [Deposition of Marla Jones, hereinafter "Jones Dep."] at 28:11-19).  These negotiations were somewhat successful.  Although the 2008 agreement was not officially amended, Vietnamese officials verbally committed to begin considering ICE travel document requests for pre-1995 Vietnamese immigrants on a case-by-case basis, without explicitly committing to accept any of them.  (Resp. Statement ¶ 8.)

After receiving this verbal commitment in 2017, ICE departed from its longstanding practice of releasing pre-1995 Vietnamese immigrants with final orders of removal after ninety days of detention.  Instead, it began detaining them for more than ninety days based on the possibility that Vietnam might issue the requisite travel documents.  (FAC ¶ 4.)  ICE also began re-detaining some pre-1995 Vietnamese immigrants who had previously been released on orders of supervision.  (*See, e.g.*, Dkt. 65-2 [Declaration of Sieu Nguyen, hereinafter "Nguyen Decl."] ¶¶ 11–12.)  Petitioners responded by filing this lawsuit challenging ICE's new detention practices on February 22, 2018.  (Dkt. 1.)

On August 6, 2018, ICE met with Vietnamese officials again to continue discussions about the status of pre-1995 Vietnamese immigrants.  (Dkt. 67-1 [Declaration of Michael V. Bernacke, hereinafter "Bernacke Decl."] ¶ 2.)  After that meeting, ICE reversed its position again.  ICE conceded that, despite Vietnam's verbal commitment to

consider travel document requests for pre-1995 immigrants, in general, the removal of these individuals was still not significantly likely.  (Resp. Statement ¶ 12.)  In October 2018, ICE instructed field offices to resume the practice of releasing pre-1995 Vietnamese immigrants within 90 days of a final order of removal.  (Dkt. 119-2 [Declaration of Tuan V. Uong, hereinafter "Uong Decl."] at Ex. F; Schultz Dep. at 178:9-22.)  That policy remains in place today.  (Resp. Statement ¶ 12.)

### D.    The Petitioners

Petitioners are Vietnamese immigrants who came to the United States prior to July 12, 1995.  (FAC ¶ 1.)  They became lawful permanent residents years ago but, based on criminal convictions, lost their green cards and were ordered removed.  (*Id*. ¶ 2.)  After facing varying periods of post-removal order detention, they have been released under orders of supervision that require them to regularly report to ICE offices.  *See* 8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.5(a).  Many have gone on to live productive lives, supporting and caring for dependent family members.  (*See e.g*., Dkt. 22-13 [Declaration of Ngoc Hoang, hereinafter "N. Hoang Decl."] ¶¶ 8, 15, 18; Dkt. 65-3 [Declaration of Dai Diep, hereinafter "Diep Decl."] ¶ 16.)

Petitioner Hoang Trinh ("Trinh") entered the United States with his family as a four-year-old refugee in 1980.  (FAC ¶ 11; Dkt. 22-9 [Declaration of Hoang Trinh, hereinafter "Trinh Decl."] ¶¶ 2–3.)  He worked in his family's bakery while growing up and now runs a Vietnamese sandwich shop with his wife.  (FAC ¶ 11; s*ee* Trinh Decl. ¶ 8.)  Trinh's wife, two children, parents, and six sisters are all U.S. citizens.  (FAC ¶ 11.)  In 2017, he was arrested by state authorities after being found in possession of a marijuana plant and incarcerated for some period of time.  (*Id.*)  Trinh was subsequently transferred to federal custody in June 2017 and ordered removed on July 27, 2017.  (*Id*.)  On October 17, 2017, ICE conducted a 90-day post-order custody review ("POCR") and

decided to continue Mr. Trinh's detention because "Vietnam had not denied him a travel document." (Resp. Statement ¶ 15.) On March 13, 2018—approximately nine months after his initial detention—ICE conducted a second POCR and decided to continue Mr. Trinh's detention "on the ground that ICE was working with Vietnam to secure a travel document." (*Id.* ¶ 16.) On April 16, 2018, Trinh was released on an order of supervision after ICE determined that he was not significantly likely to be removed in the reasonably foreseeable future. (*Id.* ¶ 17.) It was later revealed that ICE did not submit a travel document request for Trinh until May 23, 2018, a month *after* he was released from federal custody. (*Id.* ¶ 18.)

Petitioner Vu Ha ("Ha") escaped Vietnam at the age of nine and entered the United States as a ten-year-old refugee in 1990. (FAC ¶ 12; Dkt. 22-16 [Declaration of Vu Ha, hereinafter "Ha Decl."] ¶ 3.) His parents, sister, and daughter are U.S. citizens. (FAC ¶ 12; Ha Decl. ¶ 4.) Ha was arrested three times as a young adult between 2000 and 2005 and once in 2017 for failure to pay a citation for driving without a license. (FAC ¶ 12.) Following the 2017 arrest, he was transported from county jail to ICE custody and was ordered removed on September 19, 2017. (*Id.*) He was detained for almost seven months before being released on an order of supervision. (Ha Decl. ¶¶ 12, 18.)

Petitioner Long Nguyen ("Nguyen") entered the United States as an eleven-year-old refugee in 1987. (FAC ¶ 13.) His wife, three step-daughters, and two-year-old daughter are all U.S. citizens. (Dkt. 22-17 [Declaration of Long Nguyen, hereinafter "L. Nguyen Decl."] ¶ 9.) He and his wife work at a nail salon that his wife manages. (FAC ¶ 13.) In 2006, he was convicted of a nonviolent felony drug offense. (*Id.*) He was ordered removed on April 18, 2012 but released on an order of supervision later that year. (Resp. Statement ¶ 19.) Mr. Nguyen was re-detained by ICE on October 19, 2017 after ICE submitted a travel document request to Vietnam. (*Id.* ¶¶ 19–20.) Vietnam declined to issue a travel document for Mr. Nguyen on December 28, 2017. (*Id.* ¶ 22.) Although

Vietnamese officials communicated this decision to ICE in late December 2017, Mr. Nguyen was not released from custody until March 24, 2018.  (*Id.* ¶ 24.)

Petitioner Ngoc Hoang ("Hoang") Hoang entered the United States at age sixteen in 1990, after his father was jailed in a reeducation camp for having served in the South Vietnamese military.  (FAC ¶ 14; N. Hoang Decl. ¶¶ 3, 5.)  Hoang was married to a U.S. citizen with whom he has four children, all under the age of eighteen.  (FAC ¶ 14.)  Hoang now works as a nail salon technician.  (*Id.*)  In 1994, he pled guilty to check fraud and in 2010, he was placed on probation for simple assault and simple battery.  (*Id.*)  He was ordered removed on December 12, 2012 and released on an order of supervision approximately two months later.  (*Id.*)  Over the next five years, Hoang complied with the requirements of that order.  (*Id.*)  But on November 6, 2017, he was unexpectedly re-arrested by ICE officers at his home and not released from federal custody until April 23, 2018.  (*Id.*)

Petitioner Sieu Nguyen ("Sieu") entered the United States in 1989 when he was three years old.  (FAC ¶ 15; Dkt. 65-2 [Declaration of Sieu Nguyen, hereinafter "Sieu Decl."] ¶ 2.)  His parents and seven siblings are all U.S. citizens.  (Sieu Decl. ¶ 3.)  Sieu was convicted of robbery in 2007 and burglary and receipt of stolen property in 2010.  (*Id.* ¶ 5.)  He was ordered removed on December 19, 2017, and detained for approximately seven months before being released on an order of supervision.  (*Id.* ¶¶ 7, 10.)

Petitioner Dai Dep ("Diep") entered the United States as a refugee in 1995.  (Diep Decl. ¶ 2.)  His mother, stepfather, and half-siblings are all U.S. citizens, as is his biological father, who worked for the U.S. Department of Defense during the Vietnam War.  (*Id.* ¶ 9.)  In November 2015, he pled guilty to second-degree robbery, second-degree burglary, and vandalism, for which he was sentenced to two years of

imprisonment.  (FAC ¶ 16.)  He was ordered removed on October 26, 2017 and was detained for nearly thirteen months before being released on an order of supervision. (Diep Decl. ¶¶ 13, 15.)

### E.      Procedural History

Petitioners brought this action on February 22, 2018.  (Dkt. 1.)  The operative pleading contains two counts, each asserted on behalf of putative classes.  (*See* FAC ¶¶ 58–75.)  In Count One, Petitioners assert that their post-removal order detention violates federal immigration law and their constitutional right to due process where removal is not likely to occur in the foreseeable future.  (*Id*. ¶¶ 64–70.)  In Count Two, Petitioners assert that even if removal is reasonably foreseeable, their prolonged detention violates section 1231 and their right to due process when it is not coupled with an individuated bond hearing.  (*Id*. ¶¶ 72–75.)

Earlier in this litigation, the Court denied Respondents' motion to dismiss, (Dkt. 66 [hereinafter "MTD Order"]), and granted in part and denied in part Petitioners' motion for class certification, (Dkt. 75 [hereinafter "Class Cert. Order"]).  The Court certified three separate classes comprised of: (1) all pre-1995 Vietnamese immigrants who have been or will be detained by ICE for more than ninety days after receiving removal orders ("90-Day Class"), (2) all pre-1995 Vietnamese immigrants who have been or will be detained by ICE for more than 180 days after receiving removal orders ("180-Day Class"), and (3) all pre-1995 Vietnamese immigrants who have been or will be detained by ICE for more than 180 days in total without a bond hearing ("Prolonged Detention Class").  (*Id*.)  The Court also determined that the only remedy available to Petitioners

under both counts is declaratory relief.  (*Id.*)  The parties proceeded to discovery, and the instant cross-motions for summary judgment on Count One followed.[3]

## III.  LEGAL STANDARD

The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 325.  A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law.  *Id.*  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 249.

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party, and draw all justifiable inferences in its favor.  *Id.*; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).  The court does not make credibility determinations, nor does it weigh conflicting evidence.  *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).  But conclusory and speculative testimony in affidavits and moving papers is insufficient

---

[3] The Prolonged Detention Class only seeks relief under Count Two, so this class is not implicated in the instant cross-motions.

to raise triable issues of fact and defeat summary judgment.  *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  The material the parties present must be the type that would be admissible in evidence.  Fed. R. Civ. P. 56(c).

## IV.  ANALYSIS

Petitioners request that the Court grant their motion for summary judgment on Count One and issue declaratory judgments in their favor.  Specifically, Petitioners ask the Court to issue the following five declarations:

1. "There is generally no significant likelihood of removal to Vietnam for pre-1995 Vietnamese immigrants who do not hold a valid Vietnamese passport or other travel document;"

2. "180-Day Class Members have satisfied their initial burden under *Zadvydas v. Davis*, 533 U.S. 678 (2001), shifting the burden to the government to justify their continued detention;"

3. "90-Day Class Members have rebutted the six-month "presumptively" reasonable period of detention and satisfied their initial burden under *Zadvydas*, shifting the burden to the government to justify their continued detention;"

4. "Respondents unlawfully detained Petitioner Hoang Trinh and other Class Members where there was no significant likelihood of their removal in the reasonably foreseeable future by holding them in post-removal order custody for more than 180 days without submitting a travel document request to Vietnam;"

5. "Respondents unlawfully detained Petitioner Long Nguyen where there was no significant likelihood of his removal in the reasonably foreseeable future by holding him in post-removal order custody for several months after Vietnam declined to issue a travel document for him."

(Mot. at 24.)  The Court will address each proposed declaration in turn.

### A.      Petitioners' First Proposed Declaration

Petitioners' first proposed declaration states that "[t]here is generally no significant likelihood of removal to Vietnam for pre-1995 Vietnamese immigrants who do not hold a valid Vietnamese passport or other travel document."  (Mot. at 24.)  Although the Court agrees with Petitioners that in most cases, pre-1995 Vietnamese immigrants are unlikely to be removed to Vietnam, it cannot issue the broad, amorphous declaration they request.

### i.      Whether pre-1995 Vietnamese immigrants are significantly likely to be removed

Before pre-1995 Vietnamese immigrants can be removed to Vietnam, ICE must request travel documents from Vietnam, and Vietnam must respond by issuing the documents.  (Resp. Statement ¶ 1.)  Thus, the likelihood that any pre-1995 Vietnamese immigrant will be removed hinges on Vietnam's willingness to issue the documents requested by ICE.  (Uong Decl. at Ex. A [Schultz Dep. 93:14-20 ].  Most of the statistics concerning Vietnam's response rate are undisputed.  (Dkt. 115 [Joint Stipulation of Facts].)  In 2017, ICE requested travel documents for 40 pre-1995 Vietnamese immigrants, and in response, Vietnam issued 9 travel documents (22.5 percent).  (*Id.* ¶ 1.) In 2018, ICE requested travel documents for 157 pre-1995 Vietnamese immigrants, and in response, Vietnam issued 4 travel documents (2.5 percent).  (*Id.* ¶ 2.)  Finally, in 2019, ICE requested travel documents for 54 pre-1995 Vietnamese immigrants and in response, Vietnam issued 5 travel documents (9.3 percent).  (*Id.* ¶ 3.)  In total, between 2017 and 2019, ICE requested travel documents for pre-1995 Vietnamese immigrants 251 times. Vietnam granted those requests only 18 times, in just over seven percent of cases.

During this litigation, Respondents have essentially conceded that removal of pre-1995 immigrants is generally unlikely.  In October 2018, the Government admitted that, based on ICE's August 2018 meeting with Vietnamese officials, "ICE no longer believes that Vietnamese nationals who entered the United States prior to July 12, 1995 [] are significantly likely to be removed to Vietnam in the reasonably foreseeable future." (Bernacke Decl. ¶ 2.)  And in response to Petitioners' request for admission, Respondents confirmed that "pre-1995 Vietnamese aliens, except ones that currently hold a valid passport or other travel document, generally are not significantly likely to be removed in the foreseeable future."  (Uong Decl. at Ex. O [Respondents' Objections and Responses to Petitioners' First Set of Requests for Admission]; *see also* Schultz Dep. at 29:20–30:12.)  These admissions align with ICE's current practice of releasing pre-1995 Vietnamese immigrants within 90 days of them receiving a final removal order.  (Resp. Statement ¶ 12.)

Respondents do not deny their prior admissions, but instead contend that ICE's relationship with Vietnam has changed, and based on current circumstances, removal of pre-1995 Vietnamese immigrants is significantly likely.  In July 2019, ICE stationed a permanent Assistant Attaché for Removals to Vietnam ("Assistant Attaché") at the U.S. Embassy in Hanoi for the first time.  (Dkt. 124-1 [Respondents' Statement of Uncontroverted Facts, hereinafter "Respondents' SOF"] ¶ 2.)  Since October 2019, the Assistant Attaché has held weekly meetings with Vietnamese immigration officials to discuss ICE's pending travel document requests.  (*Id.* ¶ 3.)  According to Respondents, the Assistant Attaché's placement and meetings have caused Vietnam to issue travel documents more frequently.[4]  (Jones Dep. at 87:12-16.)

---

[4] The parties vigorously dispute the admissibility of a chart that Respondents submitted to support their assertion that Vietnam is now issuing travel documents at a greater frequency.  (*See* Kurz Decl. Ex. C.) The Court's Order does not rely on the chart in question.  Accordingly, Petitioners' objections to it are overruled as moot.  *See Doe v. Starbucks, Inc.*, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009) ("In motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised".).

### ii.     Petitioners' proposed declaration is improper

Petitioners' proposed declaration essentially reiterates the government's past position and states that in general, pre-1995 Vietnamese immigrants are not significantly likely to be removed.  (Mot. at 24.)  Though Petitioners' statistics on this point are compelling, the Court cannot issue this proposed declaration.

Under the Declaratory Judgment Act, "in a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  It is well established that "federal courts retain substantial discretion in deciding whether to grant declaratory relief."  *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 534 (1st Cir. 1995); *see Hewitt v. Helms*, 482 U.S. 755, 762 (1987).  Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984).  However, "federal courts may not give opinions upon moot questions or abstract propositions."  *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (internal quotation omitted).

"The duty of this court . . . is to decide actual controversies by a judgment which can be carried into effect."  *Mills v. Green*, 159 U.S. 651, 653 (1895).  Thus, the Court cannot issue a declaration that would be devoid of practical effect.  *See Calderon*, 518 U.S. at 150; *In re Iraq and Afghanistan Detainees Litig.*, 479 F. Supp. 2d 85, 118 (D.D.C. 2007) ("[A] declaratory judgment should be declined when it would serve only as a statement [] without any practical enforcement effect.").  Petitioners have not explained what practical effect, if any, their proposed declaration would have.  Nor could they do so

persuasively.  If this Court issued the proposed declaration, individual pre-1995 Vietnamese immigrants would still be required to establish that they *specifically* are not significantly likely to be removed in order to secure release from detention.  A statement from this Court that "in general," pre-1995 Vietnamese immigrants are unlikely to be removed would be of little use to them.  Such an abstract pronouncement would not have any bearing on clarifying the rights of the parties, nor would it resolve any legal claim. *See S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch. Inc.*, 24 F.3d 427, 431 (2d Cir. 1994) (affirming the lower court's declination to issue declaratory relief because the proposed declaration did "not carry any implications for practical enforcement upon the parties" and would be "a declaration . . . and nothing more").  Rather, the proposed declaration would function only as an advisory opinion, which no federal court is empowered to issue.  *See Desert Water Agency v. U.S. Dep't of the Int.*, 849 F.3d 1250, 1258 (9th Cir. 2017) ("The declaratory judgment procedure . . . may not be made the medium for securing an advisory opinion in a controversy which has not arisen.") (internal quotations omitted).  Accordingly, Petitioner's motion for summary judgment is **DENIED** as to the first proposed declaration.

### B.    Petitioners' Second Proposed Declaration

The second proposed declaration concerns the burden-shifting framework established by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  It pertains to the 180-Day Class, which is comprised of "all pre-1995 Vietnamese immigrants who have been or will be detained by ICE for more than 180 days after receiving removal orders."  (Class Cert. Order at 2.)  Under *Zadvydas*, aliens seeking release from custody bear the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *See* 533 U.S. at 701.  Once that initial showing is made, the burden shifts to the Government to respond with evidence sufficient to rebut it.  *Id.*  Petitioners' proposed declaration would allow every

180-Day Class member to bypass the first step of the *Zadvydas* framework in future cases by declaring that, as a class, there is "good reason to believe" that their removal is not significantly likely.  (Mot. at 24.)

Respondents contend that this proposed declaration cannot be issued on a class-wide basis.  They argue that, inevitably, some class members are, in fact, likely to be removed because Vietnam issues travels documents in a small, but non-negligible portion of cases.  In these instances, the class members in question will be unable to meet their initial burden of showing there is "good reason to believe" that they are not significantly likely to be removed.  *See Zadvydas*, 533 U.S. at 701.  Essentially, the government argues that because some class members will not be able to show that there is "good reason to believe" that their removal is not significantly likely, issuing a class-wide declaration would be improper.  The Court agrees.

The 180-Day Class was certified under Federal Rule of Civil Procedure 23(b)(2). (Class Cert. Order.)  Rule 23(b)(2) classes are entitled to injunctive or declaratory relief only if "a single injunction or declaratory judgment would provide relief to each member of the class."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011).  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted— the notion that the [defendant's] conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."  *Id.* (internal quotations omitted).  Thus, Rule 23(b)(2) classes cannot obtain class-wide relief when "each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant."  *Id.*  In light of these principles, Rule 23(b)(2) remedies are "generally inappropriate in actions raising significant individual liability or defense issues."  *Ramirez v. U.S. Immigration and Customs Enforcement*, 338 F. Supp. 3d 1, 47 (D.D.C. 2018) (internal quotation omitted).

Petitioners' proposed declaration clashes with the rule that relief under Rule 23(b)(2) must be appropriate for "each member of the class." *Wal-Mart Stores*, 564 U.S. at 360.  When the Court certified the 180-Day Class in 2018, it did so based on  the understanding that ICE maintained a policy of detaining pre-1995 Vietnamese immigrants beyond the initial removal period despite Vietnam's uniform policy of refusing to issue travel documents for them.  (Class Cert. Order at 15; FAC ¶ 66 [alleging that class members were being detained despite being "specifically excluded from repatriation under the repatriation agreement"].)  This presumed uniformity is what made potential class-wide declaratory relief under Rule 23(b)(2) appropriate.  It has since become clear that these uniform policies and practices are no longer in effect.  The parties now agree that Vietnam does not maintain a blanket policy of refusing to repatriate pre-1995 immigrants.  (Resp. Statement ¶ 8.)  Instead, Vietnam now considers each request from ICE on a case-by-case basis.  (*Id*.)  ICE frequently requests travel documents from Vietnam for pre-1995 immigrants, and Vietnam issues them in a non-negligible portion of cases.  (Resp. Statement ¶¶ 9–12; Dkt. 115)

Petitioners do not appear to dispute that once Vietnam issues a travel document, removal becomes significantly likely, rendering class members unable to meet their initial burden under *Zadvydas*.  *See Alfaro-Mejia v. Holder*, 2013 WL 599876, at *1 (C.D. Cal. Feb. 15, 2013) (holding that petitioner could not demonstrate that there is no significant likelihood of her removal in the reasonably foreseeable future because "travel documents for petitioner's return to El Salvador have been issued recently"); *Kumar v. Gonzales*, 555 F. Supp. 2d 1061, 1065 (N.D. Cal. 2008) (same).  Nor do they dispute that in some instances, Vietnam has issued travel documents for pre-1995 immigrants.  (Resp. Statement ¶¶ 9–12; Mot. at 16.)  Accordingly, a class-wide declaration stating that each 180-Day Class member has met his or her initial burden under *Zadvydas* would run counter to the facts in cases where Vietnam responds to ICE requests with travel documents.  Because not all class members would be entitled to the proposed relief, the

proposed declaration is improper under Rule 23(b)(2).  *See Wal-Mart Stores*, 564 U.S. at 360; *Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018) (suggesting that Rule 23(b)(2) was an improper vehicle when "some members of the certified class may not be entitled to [the requested relief]").

Furthermore, Rule 23(b)(2) remedies are inappropriate in situations where "highly individualized determinations of liability and remedy are made."  *Jamie S. v. Milwaukee Pub. Schools*, 668 F.3d 481, 499 (7th Cir. 2012).[5]  Such determinations are required to resolve individual *Zadvydas* claims.  Typically, class members bring *Zadvydas* claims in individual habeas proceedings in federal courts across the county.  (*See* Dkt. 73-1 [listing 71 individual habeas proceedings filed by pre-1995 Vietnamese immigrants in 2017 and 2018].)  Once a challenge is made, the presiding court typically engages in a fact-dependent inquiry regarding whether the petitioner has shown there is "good reason to believe" that he or she is not significantly likely to be removed, and, if that is the case, whether the government has rebutted the showing.  *See, e.g.*, *Jaime F. v. Barr*, 2020 WL 2316437, at *5 (D.N.J. May 11, 2020).  These determinations often hinge on specific evidence concerning the government's progress (or lack thereof) in obtaining travel documents for specific the petitioner.  *See, e.g.*, *Azad v. Immigration & Customs Enforcement*, 2009 WL 2569132, at *2 (S.D.N.Y. Aug. 19, 2009) (finding that ICE failed to rebut a showing by petitioner by analyzing specific contacts that ICE had with the local Consulate of Bangladesh); *Mohamed v. Ashcroft*, 2002 WL 32620339, at *1 (W.D. Wash. Apr. 15, 2002) (granting relief where government failed to offer any "specific information regarding how or when [it] expect[ed] to obtain the necessary documentation

---

[5] *Compare Nightingale v. U.S. Citizenship and Immigration Servs*, 333 F.R.D. 449, 463 (N.D. Cal. 2019) (finding that class-wide relief under Rule 23(b)(2) was appropriate because the plaintiff did "not seek relief with respect to the determinations made on individual A-File FOIA requests" but "rather challenge Defendants' pattern or practice of refusing to timely make such determinations") *with C.G.B. v. Wolf*, 2020 WL 2935111, at *19 (D.D.C. June 2, 2020) (denying relief under Rule 23(b)(2) when individual class-members' cases "raise[d] thorny, individualized questions" such that the court could not issue "an *indivisible* injunction benefiting all its members at once").

or cooperation from the Ethiopian government"). Oftentimes, *Zadvydas* claims require evidentiary hearings on the likelihood of removal. *See, e.g.*, *Owino v. Napolitano*, 575 F.3d 952, 956 (9th Cir. 2009) (ordering the district court to hold an evidentiary hearing on the issue of whether the petitioner was significantly likely to be removed to Kenya). Clearly, each separate *Zadvydas* challenge requires the presiding court to consider the facts and circumstances of the individual claim. Issuing Petitioners' proposed declaration would preempt that individualized analysis and replace it with a one-size-fits-all approach ill-suited for the inquiry at hand.

When establishing the framework that would govern future claims brought under *Zadvydas*, the Supreme Court recognized that individual cases would require the lower courts to make "difficult judgments" about whether a particular alien is significantly likely to be removed. *See* 533 U.S. at 700–01. The Supreme Court has also cautioned against issuing Rule 23(b)(2) remedies in analogous situations that involve fact-dependent determinations. *See Jennings*, 138 S. Ct. at 852 (suggesting that Rule 23(b)(2) was improper because the individual due process claims at issue are "flexible . . and call[] for such procedural protections as the particular situation demands"). In light of the individualized inquiries involved in each class members' *Zadvydas* claim, the Court cannot issue a sweeping declaration stating that every 180-Day Class member has established "good reason to believe" that their removal is not significantly likely. That determination must be made in the first instance by the court addressing their individual claim.

None of the cases Petitioners cite compel a contrary result. First, the rulings Petitioners cite occurred at the certification stage, not at summary judgment. *See e.g.*, *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010), *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014). And the relief sought in those cases was markedly different from the class-wide declaration Petitioners seek here. In each case, plaintiffs sought a declaration

that a government policy or practice was unlawful or an injunction requiring the government to halt an unlawful policy or practice. *See, e.g.*, *Parson*, 754 F.3d at 663. Petitioners seek something altogether different: a class-wide declaration that each individual class-members has satisfied a burden in hypothetical future cases. Petitioners have pointed to no case in which a court has issued such a declaration.

In sum, although many class members may be able to show that there is "good reason to believe" their removal is unlikely, others will not. The Court thus cannot find that Petitioners are entitled to a declaration that each individual class-member has satisfied their initial burden under *Zadvydas*. Accordingly, it cannot craft declaratory relief that would effectively "provide relief to each member of the class." *See Wal-Mart Stores*, 564 U.S. at 360. Petitioners' motion for summary judgment is therefore **DENIED** to the extent it seeks this declaration.

### C.    Petitioners' Third Proposed Declaration

Petitioners' third proposed declaration concerns the 90-Day Class, which is comprised of "all pre-1995 Vietnamese immigrants who have been or will be detained by ICE for more than 90 days after receiving a removal order." (Class Cert. Order at 2.) Petitioners seek a declaration that the 90-Day Class members have rebutted the six-month "presumptively" reasonable period of detention and satisfied their initial burden under *Zadvydas*.

### i.  The *Zadvydas* claim is ripe

The parties do not dispute that under *Zadvydas*, detention beyond the initial removal period is only authorized if removal is significantly likely to occur in the reasonably foreseeable future. Rather, they dispute *when* challenges under *Zadvydas* can

be brought.  Again, in *Zadvydas*, the Supreme Court, established a "presumptively reasonable period of detention" of six months "for the sake of uniform administration in the federal courts."  533 U.S. at 700–01.  Respondents first argue that the 90-day class's claim is unripe because *Zadvydas* claims are barred until detention extends beyond the presumptively reasonable six-month period.  The Court disagrees.

The central holding of *Zadvydas* is that section 1231(a)(6) does not permit detention beyond the initial 90-day removal period when removal is not reasonably foreseeable.  *See* 533 U.S. at 699–700.  At no point did the *Zadvydas* Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period.  *See Cesar v. Achim*, 542 F. Supp. 2d 897, 903 (E.D. Wis. 2008) (noting that "[n]othing about this scheme supports the conclusion . . . that the presumptive legality of detention within the first six months is irrebuttable."); *Ali v. Dep't of Homeland Sec.*, 2020 WL 1666074, at *4 (S.D. Tex. Apr. 2, 2020) (same); *but see Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (holding that "in order to state a claim under *Zadvydas*" the alien must show "post-removal order detention in excess of six months").  Instead, it held that detention for less than six months was *presumptively* reasonable but left the lower courts to determine whether detention has "exceed[ed] a period reasonably necessary to secure removal" in individual cases.  *See Zadvydas*, 533 U.S. at 699.  Respondents have already raised—and this Court has already rejected—the argument that *Zadvydas* claims are barred during the first six months of detention.  (*See* MTD Order at 14.)  Respondents cite no new binding authority for their position, and the Court remains unpersuaded by it.  *Zadvydas* established a "guide" for approaching detention challenges, not a categorical prohibition on claims challenging detention less than six months.  *See* 533 U.S. at 700–01.

//

//

**ii.  The proposed relief is nonetheless improper**

Although the Court finds that 90-Day Class members are not precluded from challenging their detentions during the "presumptively reasonable" period, the Court cannot issue the class-wide declaration they seek for the same reasons discussed above. Petitioners' proposed declaration states: "the 90-Day Class Members have rebutted the six-month 'presumptively' reasonable period of detention and satisfied their initial burden under *Zadvydas*, shifting the burden to the government to justify their continued detention." (Mot. at 24.)  This proposed declaration suffers from the same flaws as the declaration discussed in the prior section.  In some instances, Vietnam will issue travel documents for 90-Day Class members, rendering them unable to both rebut the presumption and meet their initial burden.  *See Wal-Mart Stores*, 564 U.S. at 360.  The fact-intensive question of whether individual class members are significantly likely to be removed needs to be answered in the first instance by the court presiding over the individual claim.  Petitioners' motion for summary judgment is **DENIED** to the extent it seeks a declaration that each member of the 90-Day Class has rebutted the presumption and satisfied their initial burden under *Zadvydas*.

**D.     Petitioners' Fourth and Fifth Proposed Declarations**

Finally, Petitioners seek two declarations that Respondents violated the rights Petitioners Trinh and Nguyen by detaining them for months despite the fact that they were unlikely to be removed.  Though the Court is extremely troubled by what occurred in these two individual cases, it cannot issue the retrospective declaratory relief Petitioners seek.

The disturbing facts of Trinh and Nguyen's detentions are largely undisputed.  In 2016, Trinh—a father of two who runs a small business with his wife—was convicted of

a drug-related offense.  (Trinh Decl. ¶¶ 7–8.)  When Mr. Trinh completed his state sentence, he was transferred into ICE custody.  (*Id.* ¶ 10.)  He was ordered removed on July 27, 2017.  (Resp. Statement ¶ 13.)  On October 17, 2017, ICE conducted a 90-day post-order custody review ("POCR") and decided to continue Mr. Trinh's detention because "Vietnam had not denied him a travel document."  (*Id.* ¶ 15.)  On March 13, 2018—approximately nine months after his initial detention—ICE conducted a second POCR and continued Mr. Trinh's detention again "on the ground that ICE was working with Vietnam to secure a travel document."  (*Id.* ¶ 16.)  On April 16, 2018, Trinh was released on an order of supervision after ICE determined that he was not significantly likely to be removed.  (*Id.* ¶ 17.)

It later came to light that ICE did not even submit a travel document request for Mr. Trinh until May 23, 2018—over one month *after* his release.  (*Id.* ¶ 18.)  That request was denied about one month later.  (*See id.*)  Thus, ICE's explanations for his continued detention in the POCRs—that "Vietnam had not denied him a travel document" and that "ICE was working with Vietnam to secure a travel document"—were simply untrue.  To date, ICE has offered no explanation for this injustice.  As a result of ICE's malfeasance, Mr. Trinh was unnecessarily detained for several months of his life.

Mr. Nguyen's experience with ICE is similarly troubling.  Nguyen—who was initially ordered removed in 2012 and had been on supervised release ever since—was re-detained by ICE on October 19, 2017, after ICE requested travel documents from Vietnam.  (*Id.* ¶ 21.)  On December 28, 2017, Vietnam declined to issue travel documents for Nguyen and requested that he be allowed to remain in the United States on humanitarian grounds.  (*Id.* ¶ 22.)  After receiving this response from Vietnam, ICE

inexplicably did not release Nguyen from custody until March 23, 2018, nearly three months after Vietnam declined to issue travel documents.[6]  (*Id.* ¶ 24.)

Despite the serious injustices that both Trinh and Nguyen experienced at the hands of ICE, the Court cannot grant the particular form of relief they seek in this case. Typically, declaratory relief targets prospective conduct.  Declaratory judgments are used to "afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *Bilbrey*, 738 F.2d at 1470.  But the declaratory relief Trinh and Nguyen seek is purely retrospective.  They seek declarations stating that their rights were violated in 2017 and 2018.  In support of their argument that they are entitled to this form of relief, Trinh and Nguyen contend that a retrospective declaration is "the only means of deterring Respondents from engaging in similar violations in the future."  (Mot. at 21.) The Court disagrees that this is proper grounds for issuing the proposed declarations.

What makes a declaratory judgment "a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute which affects the behavior of the defendant towards the plaintiff."  *Hewitt v. Helms*, 482 U.S. 755, 761 (1987).  However, federal courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998).  Thus, "in the context of an action for declaratory relief, a plaintiff must be seeking more than a retrospective opinion that he was wrongly harmed by the defendant."  *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) (citing *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977)).  Put another way, "a declaratory judgment merely adjudicating past violations of federal law—as opposed to

---

[6] ICE contends that it continued to detain Nguyen because it had asked Vietnam to reconsider its refusal to issue travel documents for him.  (Resp. Statement ¶ 23.)  However, there is no evidence that Vietnam has any history of acquiescing to such requests.  Nor is there any evidence that Vietnam gave ICE any indication that it was actively considering the reconsideration request.

continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction."  *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017).

Because the declaration Petitioners seek would be nothing more than a retrospective opinion that their rights were violated, the Court cannot issue it.  *See Mendia v. Garcia*, 165 F. Supp. 3d 861, 894 (N.D. Cal. 2016) (declining to issue a retrospective declaratory judgment that defendants violated plaintiffs rights); *Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997) (declining to issue a retroactive declaratory judgment that "would amount to nothing more than a declaration that he was wronged, and would have no effect on the defendants' behavior towards him"); *Rodriguez v. Tilton*, 2015 WL 3507126, at *2 (E.D. Cal. June 3, 2015) (holding that federal courts are "not empowered to issue retrospective declaratory relief with respect to allegedly unconstitutional conduct that has ended"); *C.F.C. v. Miami-Dade County*, 349 F. Supp. 3d 1236, 1254 (S.D. Fla. 2018) (dismissing claim that sought only retrospective declaratory relief when the declaration sought would be "nothing more than a gratuitous comment without any force or effect").  Accordingly, Petitioners' motion is **DENIED** to the extent it seeks retrospective declaratory relief regarding Trinh and Nguyen's detention.

//
//
//
//
//
//
//
//
//

## IV.  CONCLUSION

For the foregoing reasons, Respondents' motion for summary judgment on Count One is **GRANTED IN SUBSTANTIAL PART** and Petitioners' motion for summary judgment on Count One is **DENIED IN SUBSTANTIAL PART**.


DATED:     June 11, 2020

_____

CORMAC J. CARNEY

CHIEF UNITED STATES DISTRICT JUDGE